AO 241
(Rev. 01/15)

Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: | Eastern District of Louisiana |
|---|---|---|

| Name (under which you were convicted): Harold J. Bunch | Docket or Case No.: 17-5948 |
|---|---|

| Place of Confinement: Louisiana State Penitentiary | Prisoner No.: 586582 |
|---|---|

SECT. L  MAG. 5

| Petitioner (include the name under which you were convicted) Harold J. Bunch | v. | Respondent (authorized person having custody of petitioner) Darrel Vannoy, Warden/custodian |
|---|---|---|

| The Attorney General of the State of: |
|---|

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    22nd Judicial District Court
    Parish of Washington
    State of Louisiana

    (b) Criminal docket or case number (if you know):  10-CR8-111246

2.  (a) Date of the judgment of conviction (if you know):  August 4, 2011

    (b) Date of sentencing:

3.  Length of sentence:  35 years w/o benefits

4.  In this case, were you convicted on more than one count or of more than one crime?  ☑ Yes   ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:  Armed Robbery with firearm;
    Habitual Offender; simple burglary

6.  (a) What was your plea? (Check one)

    ☑ (1)  Not guilty          ☐ (3)  Nolo contendere (no contest)

    ☐ (2)  Guilty              ☐ (4)  Insanity plea

AO 241
(Rev. 01/15)

Page 3

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?   *Not guilty to armed robbery w/ firearm;*

*guilty to simple burglary*

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.   Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.   If you did appeal, answer the following:

(a) Name of court:   *First Circuit Court of Appeal*

(b) Docket or case number (if you know):   *2012-KA-0431*

(c) Result:   *Convictions, Sentences and Habitual Offender adjudication affirmed*

(d) Date of result (if you know):   *February 22, 2013*

(e) Citation to the case (if you know):   *So. 3d, 2013 WL 675542 (La. App. 1 Cir.)*

(f) Grounds raised:   *Insufficiency of Evidence*

(g) Did you seek further review by a higher state court?   ☑ Yes    ☐ No

If yes, answer the following:

(1) Name of court:   *Louisiana Supreme Court*

(2) Docket or case number (if you know):   *2013-KO-0632*

(3) Result:   *Denied*

(4) Date of result (if you know):   *October 11, 2013*

AO 241
(Rev. 01/15)

Page 4

(5) Citation to the case (if you know):  *123 So. 3d 1217, 2013-0632(La. 10/11/13)*

(6) Grounds raised:  *Insufficiency of Evidence*

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  ☑ Yes  ☐ No

11.   If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court:  *Please refer to information on following pages for details*

(2) Docket or case number (if you know):  *same as 11(a) (1) above*

(3) Date of filing (if you know):  *Same as 11 (a) (1) above*

(4) Nature of the proceeding:  *Same 11 (a) (1) above*

(5) Grounds raised:  *same as 11 (a) (1) above*

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☑ No

(7) Result:  *all denied relief*

(8) Date of result (if you know):  *Same as 11(a) (1) above*

AO 241
(Rev. 01-15)

Page 5

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: 22nd Judicial District, Parish of Washington, La.

(2) Docket or case number (if you know): 10-CR8-111246, Div. "G"

(3) Date of filing (if you know): Application for Post-Conviction Relief filed

(4) Nature of the proceeding: Application for Post-Conviction

(5) Grounds raised: 1.) Introduction of hearsay evidence and denial of right to confrontation regarding the statements of Mrs. Inzinna; 2) Perjured testimony of Officer Kendall Bullen, and the State's refusal to permit playing for the jury the video of Bullen's interview of the victim which would have proven that Bullen had lied; 3.) Prosecutorial Misconduct and Perjury; 4.) Perjured testimony of Detective Wendell O'Berry; 5.) Suggestive Line-Up; 6.) Misidentification and Ineffective Assistance of Counsel; and 7.) Ineffective Assistance of Counsel (failure to exclude juror).

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❒ Yes   ☑ No

(7) Result: Relief denied

(8) Date of result (if you know): December 2, 2014

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: First Circuit Court of Appeal

(2) Docket or case number (if you know): 15-KH-1672

(3) Date of filing (if you know):

(4) Nature of the proceeding: Supervisory Writ of Review

(5) Grounds raised: same as those raised in Application for Post Conviction Relief

AO 241
(Rev. 01-15)

Page 6

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result:   *Writ denied*

(8) Date of result (if you know):   *August 21, 2015*

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:   ☑ Yes   ☐ No

(2) Second petition:   ☑ Yes   ☐ No

(3) Third petition:   ☐ Yes   ☑ No   *N/A*

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

GROUND ONE:   *Confrontation Violation*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*State urged before the trial jury that certain incriminating statements were made by Mrs. Inzinnia (a co-defendant's wife), however, Ms. Inzinnia never wrote any statements in support of what the prosecution attributed to her nor did she ever testify to the alleged statements nor did she ever verify knowing petitioner by any of the various nick-names used by the prosecution.*

(b) If you did not exhaust your state remedies on Ground One, explain why:   *N/A*

AO 241
(Rev. 01-15)

Page 7

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☐ Yes        ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:        *not ripe for review until post*

*conviction because record required further development and state needed to respond on*

*whether they could produce documents to refute petition or produce audio not in appellate record.*

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☑ Yes        ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:        *Application for Post-Conviction Relief*

Name and location of the court where the motion or petition was filed:        *22nd Judicial District Court, Parish*

*of Washington, State of Louisiana.*

Docket or case number (if you know):        *10 - CR8 - 111246*

Date of the court's decision:        *December 2, 2014*

Result (attach a copy of the court's opinion or order, if available):        *Attached*

(3) Did you receive a hearing on your motion or petition?        ☐ Yes        ☑ No

(4) Did you appeal from the denial of your motion or petition?        ☑ Yes        ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?        ☑ Yes        ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:        *First Circuit Court of Appeal*

Docket or case number (if you know):        *2015 - KW - 0808*

Date of the court's decision:        *August 21, 2015*

Result (attach a copy of the court's opinion or order, if available):        *Attached*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

        *N/A*

AO 241
(Rev. 01 15)

Page 8

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:    *Exhausted the Claim through to the Louisiana*

*Supreme Court*

**GROUND TWO:**    *Knowing Use of Perjured Testimony*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*In his testimony given under Oath while on the witness stand before the trial jury, Officer Kendall Bullen gave false testimony (which went uncorrected by the prosecution) stating that he did not question the victim about gold-teeth and tatoos for identification purposes of positively identifying a suspect; however, video in possession of the prosecution showed officer Bullen doing just that and the State refused to allow the viewing of the video to impeach and discredit their witness and show that the witness gave no statement regarding the distinctive facial tatoos on petitioner nor his gold-teeth.*

(b) If you did not exhaust your state remedies on Ground Two, explain why:    *N/A*

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:    *Not ripe for review, petitioner needs the state of Louisiana to put that video in the record so that the Courts can see that the state allowed perjured testimony to go before the trial jury uncorrected on purpose.*

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    *Application for Post-Conviction Relief*

Name and location of the court where the motion or petition was filed:    *22nd Judicial District Court, Parish of Washington, State of Louisiana*

Docket or case number (if you know):    *10-CR8-116246*

Date of the court's decision:    *December 2, 2014*

Result (attach a copy of the court's opinion or order, if available):   *attached*

(3) Did you receive a hearing on your motion or petition?    ☐ Yes   ☑ No
(4) Did you appeal from the denial of your motion or petition?   ☑ Yes   ☐ No
(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No
(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   *First Circuit Court of Appeal*

Docket or case number (if you know):   *2015-KW-0808*

Date of the court's decision:   *August 21, 2015*

Result (attach a copy of the court's opinion or order, if available):   *Attached*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

*N/A*

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Two :   *Exhausted Claim through Louisiana*
*Supreme Court*

**GROUND THREE:**   *Prosecutorial MisConduct*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*In order to avoid impeaching their own witness (Officer Kendall Bullen) (whom the state allowed to commit perjury) the state urged that it could not play the video because it had nothing to play the video on in open court, yet, petitioner's attorney pointed out that there was both a Television and DVD player right there in the court room. This allowed the state to conceal[ critical evidence regarding identification] from the trial jury and the fact that they (the State) were suborning perjury without correction.*

(b) If you did not exhaust your state remedies on Ground Three, explain why: N/A

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: In order to prove this claim the appellate record (which was closed) would have required expansion. Petitioner raised the claim on Post-Conviction where the record could be expanded and the claim ripe for review.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Application for Post-Conviction Relief

Name and location of the court where the motion or petition was filed: 22nd Judicial District Court Parish of Washington, State of Louisiana

Docket or case number (if you know): 10-CR8-111246

Date of the court's decision: 12-2-14

Result (attach a copy of the court's opinion or order, if available): Attached

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☑ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☑ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: First Circuit Court of Appeal

Docket or case number (if you know): 2015-KW-0808

Date of the court's decision: August 21, 2015

Result (attach a copy of the court's opinion or order, if available): attached

AO 241
(Rev. 01/15)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

*N/A*

(c)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:   *Presented to State's Highest Court*

**GROUND FOUR:**   *Suggestive Identification*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:   *N/A*

(c)   **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:   *Appellate Counsel did not perfect this issue on appeal and when petitioner discovered the issue, he brought it at his earliest opportunity*

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   *Application for Post-Conviction Relief*

AO 241
(Rev. 01 15)

Page 12

Name and location of the court where the motion or petition was filed:  22nd Judicial District, Parish of Washington,

State of Louisiana

Docket or case number (if you know):  10 - CR8 - 111246

Date of the court's decision:  December 2, 2014

Result (attach a copy of the court's opinion or order, if available):  Attached

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☑ No

(4) Did you appeal from the denial of your motion or petition?  ☑ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☑ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:  First Circuit Court of Appeal

Docket or case number (if you know):  2015 - KW - 0808

Date of the court's decision:  August 21, 2015

Result (attach a copy of the court's opinion or order, if available):  Attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N/A

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:  Exhausted through to Louisiana Supreme Court

AO 241
(Rev. 01/15)

13. Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   ☑ Yes   ☐ No

          If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:   N/A

    (b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

        N/A

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?   ☐ Yes   ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.   N/A

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   ☐ Yes   ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.   N/A

AO 241
(Rev. 01/15)                                                                                                           Page 14

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:   James Knight
                              1073 Cleveland Street, Franklinton, La.  70438

(b) At arraignment and plea:   same

(c) At trial:                  same

(d) At sentencing:             same

(e) On appeal:                 Lieu T Vo Clark, La. Appellate Projet
                               P.D. Box 465, Mandeville, La.  70470

(f) In any post-conviction proceeding:   None

(g) On appeal from any ruling against you in a post-conviction proceeding:   None

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?   ☐ Yes   ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

N/A

(b) Give the date the other sentence was imposed:   N/A

(c) Give the length of the other sentence:   N/A

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?   ☐ Yes   ☑ No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241
(Rev. 01/15)

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 01/15)

Page 16

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: *Declare that the manner inwhich the Order for Petioner's Custody/Restraint violates the Constitution of the United States and is set aside. If petitioner is not retried within 120 days of the Orders of this Honorable Court, he shall be released.*

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on    *6-18-2017*    (month, date, year).

Executed (signed) on   *Harrell B.*   (date):  *6-18-2017*

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____



**Supreme Court**
STATE OF LOUISIANA
New Orleans

CHIEF JUSTICE
    BERNETTE J. JOHNSON            Seventh District
JUSTICES
    GREG G. GUIDRY                 First District
    SCOTT J. CRICHTON              Second District
    JAMES T. GENOVESE              Third District
    MARCUS R. CLARK                Fourth District
    JEFFERSON D. HUGHES III        Fifth District
    JOHN L. WEIMER                 Sixth District

JOHN TARLTON OLIVIER
CLERK OF COURT

400 Royal St., Suite 4200
NEW ORLEANS, LA  70130-8102

TELEPHONE (504) 310-2300
HOME PAGE  http://www.lasc.org

April 13, 2017

Honorable Richard A. Swartz
Chief Judge, 22nd JDC, Div. C
701 N. Columbia Street
Covington, LA 70433

In Re:  State Ex Rel. Harold Bunch
        Vs.
        State of Louisiana
        No. 2015-KH-1672

Dear Judge Swartz:

Attached is a copy of an action sheet and per curiam issued by this Court in the above entitled
matter which are self-explanatory.

With kindest regards, I remain,

Very truly yours,

John Tarlton Olivier
Clerk of Court

*Robin A. Burras*

By: Robin A. Burras
    Deputy Clerk of Court

ccs: All Counsel of Record

# The Supreme Court of the State of Louisiana

STATE EX REL. HAROLD BUNCH

NO.   2015-KH-1672

VS.

STATE OF LOUISIANA

IN RE:   Harold Bunch; - Plaintiff; Applying For Supervisory and/or Remedial Writs, Parish of Washington, 22nd Judicial District Court Div. C, No. 10-CR8-111246; to the Court of Appeal, First Circuit, No. 2015 KW 0808;

April 13, 2017

Denied. See per curiam.

GGG

JLW

MRC

JDH

SJC

JTG

Supreme Court of Louisiana
April 13,2017

*Robin A. Burras*

Deputy Clerk of Court
For the Court

SUPREME COURT OF LOUISIANA

No. 15-KH-1672                              APR 1 3 2017

STATE EX REL. HAROLD BUNCH

v.

STATE OF LOUISIANA

ON SUPERVISORY WRITS TO THE TWENTY-SECOND
JUDICIAL DISTRICT COURT, PARISH OF WASHINGTON

GGG

PER CURIAM:

Denied. Relator fails to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to the remaining claims, relator fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2.

Relator has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, *see* 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review. The district court is ordered to record a minute entry consistent with this per curiam.

## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2012 KA 0431

STATE OF LOUISIANA

VERSUS

HAROLD J. BUNCH

Judgment Rendered:    FEB 2 2 2013

* * * * * * *

Appealed from the
22nd Judicial District Court
In and for the Parish of Washington, Louisiana
Trial Court Number 10 CR8 111246

Honorable William J. Crain, Judge

* * * * * * *

Walter P. Reed, District Attorney
Lewis V. Murray, III, Assistant District Attorney
Franklinton, LA
    and
Kathryn Landry
Baton Rouge, LA

Attorneys for Appellee
Plaintiff – State of Louisiana

Lieu T. Vo Clark
Mandeville, LA

Attorney for Appellant
Defendant – Harold J. Bunch

* * * * * *

BEFORE: PARRO, WELCH, AND KLINE[1], JJ.

---

[1] Hon. William F. Kline, Jr., retired, is serving as judge *pro tempore* by special appointment of the Louisiana Supreme Court.

WELCH, J.

Defendant, Harold J. Bunch, and two codefendants[2] were charged by bill of information with one count of armed robbery, a violation of La. R.S. 14:64 (count one), and with one count of armed robbery, with the use of a firearm, additional penalty, a violation of La. R.S. 14:64.3 (count two).  Defendant pled not guilty. After a jury trial, defendant was found guilty as charged on both counts. Defendant filed motions for new trial, in arrest of judgment, and for postverdict judgment of acquittal, but the trial court denied all of these motions.  On count one, the trial court sentenced defendant to thirty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.  On count two, the trial court imposed the additional sentence of five years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence (to be served consecutively to the sentence imposed on count one).  The trial court also denied defendant's motion to reconsider sentence.  The state subsequently filed a habitual offender bill of information, and defendant stipulated to his status as a second-felony habitual offender.[3]  After accepting this stipulation and adjudicating defendant a second-felony habitual offender, the trial court vacated defendant's sentences on counts one and two, and he sentenced defendant to a term of thirty-five years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[4]  On appeal, defendant alleges three assignments of error, all relating to the sufficiency of the evidence supporting his conviction.  For the

---

[2] These codefendants, Wade Benjamin Inzinna and Tony Robertson, previously pled guilty in connection with this matter.

[3] The state alleged defendant's predicate offense to be a February 22, 2005 conviction for grand larceny under docket number 04-5-034-00 in Hinds County, Mississippi.

[4] We note that both the Louisiana Supreme Court and this circuit have held previously that a sentence for an armed robbery conviction that is enhanced by the Habitual Offender Law could still be further enhanced by the firearm enhancement provision of La. R.S. 14:64.3.  See State v. King, 2006-1903 (La. 10/16/07), 969 So.2d 1228; State v. Boatt, 2005-0795 (La. App. 1st Cir. 2/10/06), 928 So.2d 633, writ denied, 2006-1211 (La. 3/16/07), 952 So.2d 688. In this case, the trial court did not further enhance defendant's habitual offender sentence under La. R.S. 14:64.3. However, the state does not raise this issue on appeal, and this lack of enhancement is not prejudicial to defendant. Therefore, under State v. Price, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112 (en banc), writ denied, 2007-0130 (La. 2/22/08), 976 So.2d 1277, we decline to address the enhancement issue.

2

following reasons, we affirm defendant's conviction, habitual offender adjudication, and sentence.

## FACTS

On November 9, 2010, in Bogalusa, Tony Robertson and Wade Inzinna were driving around town when they began to talk about setting up "a lick," or a robbery. The two men discussed a plan to rob a man named James Singletary, who was an acquaintance of both men. Prior to the robbery, Inzinna picked up a third man to assist them.

Inzinna drove Robertson and the third man to the rear of a laundromat on Avenue F. Robertson and the third man waited there until Inzinna returned shortly thereafter with Singletary in his car. At some point, the third man drew a weapon, pointed it at Singletary, and demanded that he "empty his pockets." Singletary threw all of his cash on the back seat and exited the vehicle. The third man instructed Robertson to pat down Singletary. Robertson complied. Thereafter, Singletary ran away. Inzinna, Robertson, and the third man all fled in Inzinna's vehicle, but Inzinna and Robertson were arrested together shortly thereafter. During questioning by detectives, both Inzinna and Robertson identified defendant as the third man participating in the robbery.

## SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, defendant asserts that the trial court erred in denying his motion for new trial. In his second assignment of error, defendant contends that the trial court erred in denying his motion for postverdict judgment of acquittal. In his third assignment of error, defendant challenges the sufficiency of the evidence presented at trial, arguing that it was inadequate to support his conviction. Because defendant's first two assignments of error also raise only the sufficiency issue, we treat all of defendant's assignments of error together.

A conviction based on insufficient evidence cannot stand, as it violates due

3

process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. C.Cr.P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; **State v. Mussall**, 523 So.2d 1305, 1308-09 (La. 1988). The **Jackson** standard of review, incorporated in Article 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. See **State v. Hughes**, 2005-0992 (La. 11/29/06), 943 So.2d 1047, 1051; **State v. Davis**, 2001-3033 (La. App. 1st Cir. 6/21/02), 822 So.2d 161, 163-64.

In the instant case, defendant does not dispute that an armed robbery with a firearm occurred, so we need not discuss whether the statutory elements of that offense and its enhancement provision were sufficiently proven at trial. Instead, we consider only whether the state carried its burden in proving that defendant was one of the perpetrators.

Defendant did not testify at trial, but his theory of innocence was supported

4

by the testimony of Inzinna, who testified as a defense witness and stated that the actual third perpetrator was a man nicknamed "Gotti." Inzinna also identified a written document that he had signed in which stated he had lied about the involvement of defendant in order to get a lesser sentence for himself.

In contrast, Singletary, the victim identified defendant as the armed perpetrator both in a photographic lineup presented by Captain Kendail Bullen of the Bogalusa Police Department and at the trial. The victim testified that he looked at defendant and Inzinna as they were talking and that he had "no question" about defendant's identity. In addition, the state elicited testimony from Robertson, who unequivocally stated that defendant was the third man involved in the robbery and that he was the man armed with the gun. Further, during its rebuttal, the state recalled Captain Bullen to testify that in the immediate aftermath of the incident, both Robertson and Inzinna separately identified defendant as the third perpetrator. Captain Bullen also detailed that, during his interview, Inzinna described defendant in great detail, providing at least two of his street names and identifying several distinctive tattoos, including tattoos on his eyelids with the inscription "What's Next." Viewed in the light most favorable to the prosecution, the evidence presented by the state at trial was clearly sufficient to support defendant's conviction.

In the present case, the jurors were fully aware that the defense presented testimony attempting to identify a different person as the third man involved in the robbery. In addition, the jurors were aware of Robertson's plea deal as a result of his decision to testify for the state, as well as Inzinna's prior convictions for numerous offenses, including identity theft and fraud. A reviewing court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. **State v.**

5

Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). Under these circumstances, we cannot say that the jury's verdict, based on its apparent belief of the testimonies of Singletary, Robertson, and Captain Bullen, was irrational under the facts and circumstances presented to them. See **Ordodi**, 946 So.2d at 662.

For the foregoing reasons, the defendant's conviction, habitual offender adjudication, and sentence are affirmed.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.**

6

NO. __
SUPREME COURT
STATE OF LOUISIANA

DOCKET NO. __

STATE OF LOUISIANA

VERSUS

HAROLD J. BUNCH

APPLICATION FOR WRIT OF CERTIORARI TO THE LOUISIANA FIRST CIRCUIT
COURT OF APPEAL, DOCKET NO. __ ON DIRECT APPEAL FROM THE
22ND JUDICIAL DISTRICT COURT, PARISH OF WASHINGTON, DOCKET NO. 10-
CR-8 112XX, HONORABLE WILLIAM J. CRAIN, JUDGE PRESIDING

ORIGINAL BRIEF FILED ON BEHALF OF
HAROLD J. BUNCH, DEFENDANT - APPELLANT

RESPECTFULLY SUBMITTED:

HAROLD J. BUNCH #498352
GENERAL DELIVERY
LA STATE PENITENTIARY
ANGOLA, LA 70712

TABLE OF CONTENTS

PAGE NO.

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

WRIT GRANT CONSIDERATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

QUESTIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ASSIGNMENT OF ERROR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ISSUE OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

i

## JURISDICTION

Jurisdiction of this Honorable Supreme Court of Louisiana is invoked in this criminal matter by virtue of La. Const. Art. V § V (1974).

## WRIT GRANT CONSIDERATION AS REQUIRED BY SUPREME COURT RULE X

Appellant request writ grant consideration in this Honorable Supreme Court to review the correctness of the decision of the First Circuit Court of Appeal in the present case which denied his direct appeal claim. The grant or denial of an application for writs rests within the sound judicial discretion of this Court. The following while neither controlling, nor fully measuring the court's discretion, indicate the character of the reasons that should be considered. One (1) writ grant consideration is presented in order for this application to be granted. Appellant asserts that the First Circuit Court of Appeal has rendered a conflicting decision on the insufficiency of evidence claim which is contrary to clearly established Federal law in Jackson v. Virginia, 443 U.S. 307 (1979). The following issue is a constitutional question of law for this application to be granted on the merits that are litigated herein. See, Sup. Ct. Rule X § (i), (4).

Because the First Circuit Court of Appeal has issued an erroneous ruling, this Honorable Supreme Court should grant certiorari and review whether the evidence was sufficient to convict the appellant for the offense charged.

For this court's review, appellant presents the original assignments of error from his direct appeal brief.

## STATEMENT OF CASE

James Singletary, the robbery victim, reported to police that he had been robbed by two individuals he knew as Ben Inzanza and Tony Robertson. There was a third individual who pointed a gun at the victim, he however did not know the person. (R.Pp. 102, 286, 290).

The victim described the third man as having braids and said he did not recall gold teeth or tattoo; (R.P.308) The victim was subsequently shown a photo lineup and picked the defendant out as the individual who had the gun (R.P.298) At trial, the victim admitted that the defendant has gold teeth, and that defendant also has tattoos on his face that he did not notice because he was more focused on the gun pointed in his face.( R.P. 308-309) The defendant was subsequently arrested and charged with armed robbery with the use of a firearm ..

The state then filed a bill of information charging defendant for the offense of armed

robbery with the use of a firearm, a violation of La. R.S. 14:64 AND 14:64 (bill of information 10-CRS-111246; R.P.11). The defendant was thereafter arraigned and pled not guilty to the charges on February 14, 2011 (R.P. 2). Trial by jury was commenced on August 1, 2011, and on August 4, 2011, the jury found defendant guilty as charged. (R.P. 2) On October 19, 2011, a motion for post-verdict judgment of acquittal and a motion for a new trial was filed and denied by the trial court. On the same date, defendant was sentenced by the trial court to thirty years on the armed robbery charge, and five years consecutive on the firearm enhancement penalty.

The state then filed a habitual offender bill upon which the defendant was arraigned and entered a denial ( R.P.9 ). On November 21, 2011, defendant stipulated to being a second felony offender, was adjudicated as such by the trial court, and sentenced to thirty-five years imprisonment in the Louisiana Department of Corrections at hard labor without benefit of probation or suspension of sentence. (R.P. 10). The defendant now appeals.

## QUESTION OF LAW

1. Was the evidence sufficient under the Fourteenth Amendment to sustain a conviction for armed robbery?

## ASSIGNMENT OF ERROR

The evidence is insufficient to support the conviction.

## ISSUE OF LAW

Is the evidence insufficient to support the conviction.

## ARGUMENT

As the evidence is insufficient to convict, the court of appeals should have reversed the appellant's conviction and remanded the case back to the trial court for further proceedings

Harold Bunch has been convicted of armed robbery with the use of a firearm. The evidence presented by the state at trial consisted of the testimony of the victim James Singletary and one of the co-defendants Tony Robertson. As Mr. Singletary's identification of Mr. Bunch was less than credible and Mr. Robertson's testimony was tainted by a sweet heart deal with the state, there was reasonable doubt that Mr. Bunch was involved in this armed robbery.

In reviewing the sufficiency of the evidence to support a criminal conviction, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the court

1

to determine whether the evidence is minimally sufficient. A complete reading of the transcript of this trial shows that the state failed to meet the burden of proof enunciated by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781,(1979). In Jackson V. Virginia, Supra, the United States Supreme Court set out the standard by which appellate courts are to review the sufficiency of the evidence in criminal prosecutions:

... the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of the fact could have found the essential elements of the crime beyond a reasonable doubt.

Also see State V. Matthews, 375 So.2d 1165 (La. 1979). Ultimately, all the evidence in the record, viewed in a light most favorable to the state, must satisfy the reviewing court that a rational trier of fact could have found the defendant guilty of crime for which he was convicted, beyond a reasonable doubt. State V. Perow, 616 So.2d 1336 (La. App. 3d Cir. 1993)

Mr. Singletary only saw the armed assailant for the brief moments when the gun was pointed in his face. He admitted that under the circumstances, he was "scared," "petrified" and "shaking completely". (R.P.296). Clearly, it was a stressful situation for Mr. Singletary, and his ability to make an identification under those circumstances was compromised. Additionally, Mr. Singletary was confronted with the fact that while Mr. Bunch has gold teeth and tattoos on his face, Mr. Singletary was asked about any identifying features and failed to mention either distinctive characteristic. (R.P. 308). Mr. Singletary's explanation for his failure to notice these facial features was that he was not focused on his face or his mouth, he was focused on the weapon. (R.Pp. 308-309). Based on the admissions by Mr. Singletary that he did not focus in on the assailant's face, there was no other reasonable conclusion for a jury to draw other than that Mr. Singletary could not have made a reliable identification under the circumstances.

Next, the state presented Tony Robertson, who admittedly was present during the armed robbery, but was given a plea agreement where he pled guilty to conspiracy to commit armed robbery an would receive five years. (R.P.318). He testified that it was Ben Inzinna who wanted to go "setup a lick" that day. (R.P. 320). Mr. Robertson also did not know the third person prior to the day of the robbery. (R.P.331). He testified that they picked up defendant and then later defendant used a gun to rob Mr. Singletary (R.Pp. 324,326). However, Mr. Robertson's testimony minimalized his own involvement in the events, and was procured after the state offered him a deal

which reduced his exposure from a minimum of fifteen years to ninety-nine years to a mere five year agreed upon sentence. In light of the deal offered to and accepted by Mr. Robertson, his testimony is also less than credible.

Wade "Ben" Inzinna also testified at trial. Mr. Inzinna had already pled guilty to armed robbery and was serving a fifteen year sentence. (R.P.265). Mr. Inzinna was the only person who was acquainted with the person who pointed a gun at Mr. Singletary that day. At trial, Mr. Inzinna testified that it was Mr. Robertson who came up with the idea to commit a robbery that day. (R.P. 344). Mr. Inzinna admitted that he did pick up another person in the projects, but that person was not defendant. (R.P.345). Although Mr. Inzinna initially gave a statement claiming it was defendant who was with him at the time of robbery, he later executed an affidavit recanting that statement (R.P.350). At trial, under oath, he testified consistently with his affidavit that defendant was not involved in the robbery of Mr. Singletary. (R.P.358)

The state presented nothing more than the unreliable witness identification of defendant by Mr. Singletary and the testimony of a co-defendant who was influenced to testify by a sweetheart deal that limited his sentencing exposure. Additionally, another co-defendant testified that defendant was not involved in the armed robbery. Considering the totality of the evidence, it is clear that there is an abundance of reasonable doubt as to whether defendant committed an armed robbery in this case. There was inadequate and insufficient evidence to support the conviction for armed robbery with the use of a firearm. As a result, the conviction should be reversed.

## CONCLUSION

The conviction should be reversed and the sentence be vacated.

RESPECTFULLY SUBMITTED:

HAROLD J. BUNCH #586582
LA STATE PENITENTIARY
GENERAL DELIVERY
ANGOLA, LA. 70712

## CERTIFICATE OF SERVICE

I, Harold J. Bunch, hereby certify that a copy of the foregoing Application for Writ of Certiorari has been served upon the Honorable William J. Crain, District Court Judge, 22nd Judicial District Court, Walter P. Reed, District Attorney for Washington parish, properly addressed and with sufficient postage affixed on this _____ day of March, 2013.

HAROLD J. BUNCH

Case 2:17-cv-05948-SM-MBN   Document 3   Filed 07/03/17   Page 36 of 100

\*12439 123 So.3d 1217

2013-0632 La. 10/11/13

Supreme Court of Louisiana.

**STATE of Louisiana**
v.
**Harold J. BUNCH.**

**No. 2013-KO-0632.**

Oct. 11, 2013.

Prior report: La.App., 2013 WL 675542.

In re Bunch, Harold J.;--Defendant; Applying For Writ of Certiorari and/or Review, Parish of Washington, 22nd Judicial District Court Div. G, No. 10 CR8 111246; to the Court of Appeal, First Circuit, No. 2012 KA 0431.

Denied.

© 2014 Thomson Reuters. No claim to original U.S. Govt. works.

# STATE OF LOUISIANA
# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

HAROLD BUNCH

NO.   2015 KW 0808

AUG 2 1 2015

---

In Re:   Harold Bunch, applying for supervisory writs, 22nd
Judicial District Court, Parish of Washington, No. 10-
CR8-111246.

---

BEFORE:   McDONALD, McCLENDON, AND THERIOT, JJ.

WRIT DENIED.

JMM
PMc
MRT



**Supreme Court**
STATE OF LOUISIANA
New Orleans

CHIEF JUSTICE
  BERNETTE J. JOHNSON          Seventh District

JUSTICES
  GREG G. GUIDRY               First District
  SCOTT J. CRICHTON            Second District
  JEANNETTE THERIOT KNOLL      Third District
  MARCUS R. CLARK              Fourth District
  JEFFERSON D. HUGHES III      Fifth District
  JOHN L. WEIMER               Sixth District

JOHN TARLTON OLIVIER
CLERK OF COURT

400 Royal St., Suite 4200
NEW ORLEANS, LA 70130-8102

TELEPHONE (504) 310-2300
HOME PAGE http://www.lasc.org

July 14, 2016

Harold J. Bunch #586582
General Delivery
Louisiana State Penitentiary
Angola, LA 70712

STATUTS

Re:  2016 - KH - 1337

Harold J. Bunch
vs.
State of Louisiana

This is to advise that the pleadings in the above entitled matter were received and filed on 7/14/2016.
The filing was metered on 7/7/2016.  The case bears the above number on the Docket of this Court.

John Tarlton Olivier
Clerk of Court

JTO: tam
ccs:  Hon. Johnny D. Crain, Clerk
      Hon. Scott Gardner
      Hon. Warren Montgomery
      Hon. Rodd Naquin, Clerk
      Court of Appeal, First Circuit, Number(s)
      22nd Judicial District Court, Div. "G" Number(s)

2016 KW 0594
10-CR8-111246

RECEIVED - FILED
JOHNNY D. CRAIN - CLERK
WASHINGTON PARISH

⁵⁰¹⁸ DEC 17   PM 10 41

STATE OF LOUISIANA          NUMBER: 10 CR8 111246   DIV.   G

22ND JUDICIAL DISTRICT COURT

VERSUS

WASHINGTON PARISH

HAROLD BUNCH                STATE OF LOUISIANA

## ORDER AND REASONS FOR JUDGMENT

This matter is before the court pursuant to an application for post conviction relief (the "Application") filed by Harold Bunch, pro se, ("Bunch" "Defendant" or "Petitioner"). Petitioner, along with two co-defendants, Wade "Ben" Inzinnia and Tony Robertson, were charged with Armed Robbery under R.S. 14:64 and the enhanced penalty statute, Armed Robbery with a Firearm, R.S.14:64.3 occurring on November 9, 2010. At trial, Defendant was found guilty on both counts and later adjudicated a second felony offender under R.S. 15:529.1. He was sentenced to serve thirty-five years at hard labor without benefit of probation, parole, or suspension of sentence. The conviction, adjudication and sentence were affirmed by the First Circuit and writs denied by the Supreme Court. This Application was timely filed.

Bunch lists seven claims for relief summarized as follows: 1) introduction of hearsay evidence and denial of the right of confrontation regarding the statements of Mrs. Inzinnia; 2) perjured testimony of Officer Kendall Bullen and the State's refusal to permit playing of the video of Bullen's interview of the victim which would prove that Bullen lied; 3) prosecutorial misconduct and perjury regarding the availability of equipment to play the video noted in claim #

1

2; 4) perjured testimony of Detective Wendell O'Berry regarding the statements of Ben Inzinnia and the court's refusal to play the video; 5) suggestive lineup presented to the victim; 6) misidentification and ineffective assistance of counsel; and 7) ineffective assistance of counsel in not excusing a juror who stated she knew the victim and was a "family member".[1]

Ben Inzinnia, a well known offender in the Bogalusa area, conceived a plan to rob James Singletary who Inzinnia knew to buy and sell drugs. Inzinnia brought Tony Robertson into the plot which was to rob Singletary of either money or drugs. Shortly before the robbery was committed in broad daylight, Robertson and Inzinnia were seen by a police officer doing regular patrol. That officer, knowing Inzinnia to be a convicted felon, called the station to check whether he had any outstanding warrants. Waiting for a response, the officer followed Inzinnia's vehicle.

The two men were aware of the officer's interest in their vehicle and took steps to avoid the tail. It is quite possible that this gave Robertson some concern, but regardless of the reason, Robertson told Inzinnia that he was not interested in participating. Inzinnia then called Bunch to assist. Inzinnia knew Bunch but Robertson did not. Inzinnia and Robertson drove to Petitioner's mother's home where they him picked up.

---

[1] Bunch also mentions the composition of the grand jury and other factors which he argues entitle him to relief. However, he does not mention them in his claims, does not offer legal argument for their validity and in some instances misstates the facts. Bunch also seems to argue that he had previously been denied counsel in perfecting post conviction relief which is not the case. Since Bunch has chosen to present his claims in list form, this court will refrain from analyzing those claims obliquely mentioned but not included in his list and without any factual or legal support.

2

The plan was to drop off Robertson and Bunch in a somewhat secluded location. Inzinnia would pick up Singletary and bring him back to that location to effect the robbery. Earlier that day, Inzinnia had called Singletary asking if the victim would get him some drugs. The victim wanted a ride to purchase a drink and saw Inzinnia's call as an opportunity for that ride. His testimony regarding his participation in a drug deal was equivocal but not significant in that a robbery actually occurred.

Inzinnia picked up Singletary and drove to where Robertson and Bunch were waiting, ostensibly to purchase some stolen jeans out of the back seat of Inzinnia's car. Inzinnia exited the car and shortly thereafter, Bunch pulled a gun and robbed Singletary of less than $50 in cash. After the victim was searched for more items of value and let go, Inzinnia and Robertson drove Bunch back to the blue house in the projects where they had picked him up.

The victim reported the robbery mere minutes after it happened. Inzinnia knew everyone involved in the robbery, victim and perpetrators. Singletary knew both Inzinnia and Robertson and when he reported the crime, it was an easy task to effect an arrest, based on Singletary's identification of those two participants and the earlier happenstance citing of Inzinnia's vehicle. Inzinnia and Robertson were quickly picked up by police and they along with the victim were interviewed by Bogalusa Police Officers.

During his interview, Inzinnia identified Petitioner by one of his street names, "Globe." He also stated that he had Globe's phone number saved in his

3

cell phone as "Hot Boy" and that the officers were free to "search" the phone which was in his wife's possession. Captain Kendall Bullen testified that a search of those two names in his department's "alias" list pointed to Bunch.

When the officers contacted Mrs. Inzinnia about her husband's phone and "Hot Boy" she told them that that individual was also known by the street name "Mutha" (phonetic). There was no testimony that Mrs. Inzinnia "identified" Bunch as a participant. However, when Ben Inzinnia was questioned about this third alias, he agreed that name was also a match to his co-conspirator. Inzinnia and Robertson both identified a photo of Bunch as a fellow perpetrator and those identifications were taped by the police.

Several days later, Singletary was presented with a six person photo array and he confirmed the identification of Bunch as the robber with the gun. The arrest warrant followed and Bunch was eventually arrested when he was found crouching on the top shelf of a closet.

As is typically the case in pro se pleadings, the court is faced with the very difficult task of deciphering the legal arguments of an individual who is generally not formally educated in the law and often times, not well educated by the public school system. Judge Parro writing for the First Circuit in State ex rel. Lay v. Cain, 691 So.2d 135, 96-1247 (La.App. 1 Cir. 2/14/97) described this task as "sometimes as easy as catching a greased snake with your bare hands." However, while that task might be well nigh impossible, courts are duty bound to grant leeway to inartful pleadings in order to carry out justice.

4

At the same time, Bunch bears a heavy burden at this stage of these proceedings. CCrP Art. 930.2. At a bare minimum, he has the responsibility to accurately point to facts that would entitle him to relief. Comparing some of Bunch's alleged "facts" with the record demonstrates the weakness of this Application. All of his many references to defects in the grand jury deliberations are of no import in that he was charged by Bill of Information and not by Indictment.

Likewise he complains that a family member of the victim, "Ms. Louise Jackson was on the Grand Jury which indicted petitioner." The record reflects that no one by that name participated in voir dire and not a single member of the petit jury panel mentioned a familial relationship with any of the witnesses. Further, many of the facts that are accurate are simply immaterial when viewed in pari materia with all of the evidence elicited at trial.

**Claim 1**

While Bunch asserts that his attorney should have compelled Mrs. Inzinnia to testify, he has failed to enlighten the court on what cross examination would have revealed. Since she at least had some knowledge of Bunch, it is quite possible that information detrimental to Petitioner would have been forthcoming. Bunch has failed to provide factual or legal support of this claim.

**Claim 2**

Bunch complains that Captain Kendall Bullen lied when he testified that he did not ask Singletary about "gold teeth are (sic) tattoos." Bunch's argument

is that Bullen did in fact ask the question. Bunch has gold teeth, tear drop tattoos

under his eyes and "What next" tattooed on his eyelids. In the initial interview

and at trial, Singletary testified that he did not remember any of those

identification markers, as opposed to saying that those markings were absent. All

Singletary remembered was his assailant's eyes.

Singletary only saw his assailant for a matter of minutes while a gun was

being poked at his head. He identified Bunch as the perpetrator from a six

person photo array and later at trial. Whether Bullen or another officer asked the

question is of no moment. Even if the discrepancies in the testimony exist and

were material, Bunch has failed to produce either a transcript of the video or the

video itself, evidencing that fact. Also since Singletary did not know Bunch, it is

unlikely Bullen would have asked him "Does Mr. Bunch have gold teeth or

tattoos?" as defendant maintains.

**Claim 3**

In this third claim, Bunch accuses the District Attorney of prosecutorial

misconduct in "testifying" that the court lacked the equipment to play a video

tape, when in fact such equipment was available. A review of the record shows

that this exchange occurred during cross examination of the victim beginning on

page 306 of the trial transcript and reveals that it is the State and not Bunch's

attorney who indicates that the equipment was available.

Bunch also argues that the court aided the State in its deprivation his rights

by denying Bunch's attorney the opportunity to refresh the witness's recollection

6

by playing the video. Lastly Bunch argues that this issue was not urged on appeal because his trial counsel did not lodge an objection, pointing to another instance of ineffectiveness.

The Supreme Court in Strickland v. Washington 466 U.S. 668, 104 S Ct. 2052, 80 L. Ed. 2d 674 (1984) set forth the standard for analysis of an ineffective of assistance of counsel claim as follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable...

The court issued its ruling based on Code of Evidence Article 613 in that no foundation had been laid in questioning Singletary of any statements made that were inconsistent with any prior statements. He was asked if the officers asked him if the assailant had gold teeth or tattoos, to which he responded that he did remember the question and further recalled that he had answered in the negative. Petitioner offers no authority that the trial court's ruling was incorrect. Finally, Bunch's facts are once again wrong. His counsel did object to the court's action and a review of the record confirms its correctness.

### Claim 4

Petitioner alleges that the court erred in refusing to let his attorney play the video tape of Inzinnia's interview. The record does not establish that counsel sought to play Inzinnia's interview and therefore, the court did not err. As to whether or not the lack of such a request was ineffective for the reasons given by Petitioner, counsel's choice could very well have been reasoned judgment. As Justice Scalia wrote in his dissent in Martinez v. Ryan, 132 S. Ct. 1309, 182 L.Ed.2d 272, 80 USLW 4216, "has a duly convicted defendant ever been effectively represented?"

"Courts must judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct, and scrutiny of

7

counsel's performance must be highly deferential."Rose v. Flores-Ortega, 528
U.S. 470, 120 S.Ct. 1029, 1034-35, 145 L.Ed. 2d 985 (2000). Playing Inzinnia's
incriminating statements about Bunch made a short time after the robbery would
only serve to repeat for the jury, factors beneficial to the State's case, despite the
minor inconsistencies in Bunch's identifying marks.

**Claim 5**

Bunch asserts that the photo array shown to the victim was unduly
suggestive in that the heads of the five other persons were large while his photo
was small. Bunch has failed to provide copies of the line-up for evaluation by
this court. Additionally, Singleton's photo array was not the only positive
identification of Bunch. In considering defendant's claims on appeal, the First
Circuit noted as follows:

> When the key issue is the defendant's identity as the perpetrator, rather
> than whether the crime was committed, the state is required to negate any
> reasonable probability of misidentification. Positive identification by only
> one witness is sufficient to support a conviction. It is the factfinder who
> weighs the respective credibilities of the witnesses, and this court will
> generally not second-guess those determinations.See State v Hughes
> 2005-0992 (La. 11/29/06), 943 So. 2d 1047, 1052;State v. Davis 2001-
> 3033 (La. App. 1st Cir. 6/21/02), 822 So. 2d 161, 163-64.

During the investigation, Bunch was matched using the police's alias data
base, identified by Inzinnia who knew him, and by Robertson and the victim by
photo identification. Bunch was also identified at trial by those same persons,
although Inzinnia who was well known to the police and in fact, on parole for a
prior offense at the time of the subject armed robbery testified that he had
provided Bunch's name because he was on drugs. Despite his allegedly
intoxicated condition, he had the presence of mind to "falsely" identify Bunch,
matching several of his known alias's, highly individualized if not unique
tattoos, gold teeth, and cell phone call history on the date of the offense, just to
throw the police off the person who actually committed the crime.

The jury heard the testimony of all of the individuals connected with the
crime and reviewed all of the photos used for identification. They chose to reject
the eleventh hour testimony of Inzinnia who admitted to perjuring himself
whether at trial or during the initial investigation. The jury also heard the details
of his extensive criminal record. The jury rejected the defense's argument of
misidentification made at trial and on appeal and this court finds no compelling
reason to question the jury's finding.

**Claim 6**

This claim is a reiteration of Bunch's prior claims regarding the video and

---

[2]. Bunch claims that Inzinnia said he had two tear drop tattoos, not four and that his
eyelids read "Who's Next" and not "What's Next."

Case 2:17-cv-05948-SM-MBN   Document 3   Filed 07/03/17   Page 49 of 100

Singletary's failure to notice Bunch's very obvious and unique identifying features. His assertion of a <u>Strickland</u> claim based on his attorney's failure to bring forth testimony about how long Petitioner had tattoos is without merit.

The same is true of Bunch's claim that his attorney should have pointed out Bunch's unique features. Those features were mentioned several times at trial by different witnesses calling them to the attention of the members of the jury during the two day trial. Bunch did not wear a face mask at trial. He had not had his tattoos or gold teeth removed. Even if his attorney did not ask that the jury look at his client, it would be contrary to human nature not to study those features whenever they were mentioned. Singletary's failure to notice those during the robbery was reasonably explained. The gun pointed at his head was much more significant than tattoos.

### Claim 7

"Mr. Bunch lawyer at sentence hearing Mr. Lawyer told the courts on record. That he had committed ineffective assistance of counsel for leaving a family member and juror on Mr. Bunch's, trial jury after she state that she knew the victim." (sic)

Bunch is correct that one of the jurors, <u>Ms. Miller</u>, stated that she knew the victim and one of the police officers and that his attorney admitted that it was an error on his part to not excuse her. Bunch goes on to state the following "facts:"

At the time the Trial jury took up this case, the prosecutor knew the following:

1) that there was one vote towards the prosecution with no effort of persuasion of presentation of evidence or witnesses testimony being presented.

2) That the prosecution had someone on the Trial jury who could relay to the remaining Jurors inside information which did not come from the testifying witnesses or the evidence presented.

3) The Grand Jury process was thwarted from functioning as a tool of Administering Justice. Instead, the Trial Jury became a tool of vengeance and opportunity for the parties who gave false testimony against the accused. And it became another notch on the belt for the prosecution...

Furthermore there are facts here to consider:

1.) Ms. Louise Jackson was on the Grand Jury which indicted petitioner.

2.) Negative motive or intent can be inferred on part of defense counsel as there was no advantage or tactical reason to allow the person to remain.

3.) The silence of the prosecutor shows a will to win at all costs.

4.) Lastly, the court, defense attorney and prosecution permitted the trial to

9

proceed when it was obvious that there was manipulation of the
constitutionally legal process due to Mr. Bunch.

The record is at odds with many of these "facts." There was no Grand Jury. No

one by the name of Louise Jackson was on the petit jury panel. As to the other

facts, Bunch offers no proof.

Finally, even excluding those "facts" which are clearly in error, Bunch has

failed to satisfy his burden of proof of prejudice in his Strickland claim.

> To establish prejudice under Strickland, Petitioner must show there is a
> reasonable probability that, but for counsel's unprofessional errors, the
> result of his case would have been different. A reasonable probability is a
> probability sufficient to undermine confidence in the outcome. 466 U.S. at
> 694, 104 S. Ct. at 2068. "The mere possibility of a different outcome is not
> sufficient to prevail on the prejudice prong."Ransom v. Johnson, 126 F.
> 3d 716, 721 (5th Cir. 1997) cert denied 522 U.S. 944, 118 S.Ct. 361, 139
> L.Ed. 2d 281 (1997).  A petitioner must show "that the adversary process
> in the present case went so far wrong that no court may have confidence
> that it produced a reliable and just result."State v. Stewart, 2000-2960 (La
> 3/15/02). 815 So.2d 14, 19. "Courts must judge the reasonableness of
> counsel's conduct on the facts of the particular case, viewed as of the time
> of counsel's conduct, and scrutiny of counsel's performance must be
> highly deferential."Rose v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029,
> 1034-35, 145 L.Ed. 2d 985 (2000).

The defendant must prove actual prejudice before relief will be granted.

State v. Serigney 610 So 2d 857, 859-60 (La. App. 1st Cir. 1992). writ

denied, 614 So 2d 1263 (La. 1993). It is not sufficient for a defendant to

show that the error had some conceivable effect on the outcome of the

proceeding. Rather he must show that, but for the counsel's unprofessional

errors, there is a reasonable probability the outcome of the trial would have

been different. State v. McMillan, 09-2094 (La. App. 1sr Cir. 7/1/10). 43

So. 3d 297, 302, writ denied, 10-1779 (La. 2/4/11), 57 So. 3d 309. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. See Serigney, 610 So. 2d at 860. State v. Ducre 2012 KA 0269 9/21/12.

The burden of proof remains at all times with Petitioner. CCrP Art 930.2. In this case, Petitioner has failed to meet that burden. For these reasons the court denies the Application for post-conviction relief.

Franklinton, Louisiana, this __2__ day of December , 2014.

_____

JUDGE

PLEASE SERVE ALL PARTIES

INCLUDING PETITIONER'S CUSTODIAN

AND THE INDIGENT DEFENDER'S OFFICE

11

TWENTY-SECOND JUDICIAL DISTRICT COURT

PARISH OF WASHINGTON

STATE OF LOUISIANA

COPY

STATE OF LOUISIANA

VERSUS                          NO. 10-CR8-111246

HAROLD J. BUNCH

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

TRANSCRIPT OF PROCEEDINGS taken before
the Honorable William J. Crain, Judge
Presiding, Division G, Twenty-Second Judicial
District Court, Parish of Washington,
State of Louisiana, on **October 10, 2011**, in
Franklinton, Louisiana.

SENTENCING

VOLUME III

APPEARANCES:

    LEWIS V. MURRAY, III, ESQ.
    (ASSISTANT DISTRICT ATTORNEY)

    JAMES S. KNIGHT, ESQ.
    (FOR HAROLD J. BUNCH)

REPORTED BY:

    Theresa Trapani, CCR
    Official Court Reporter
    Certificate No. 93047

EXhibit 1

348

431

1            All right.

2            "Twenty-Second Judicial District

3   Court, October term, 2011, to the

4   Honorable, the Twenty-Second Judicial

5   District Court of Louisiana, sitting in

6   and for the Parish of Washington, comes

7   now into open court the undersigned

8   District Attorney of the Twenty-Second

9   Judicial District of Louisiana, in the

10   name and by the authority of said State

11   Informs this Honorable Court:  One, that

12   Harold Bunch, date of birth, 5/7/85;

13   Social Security, 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; 842 Elliot

14   Street, Bogalusa, Louisiana 70427; late of

15   the Parish of Washington, on the 5th day

16   of October, in the year of our Lord 2011,

17   in the Parish of Washington, aforesaid,

18   and within the jurisdiction of the

19   Twenty-Second Judicial District Court of

20   Louisiana, for the Parish of Washington,

21   was found guilty of armed robbery by

22   violating Revised Statute 14:64 under

23   Docket No. 10-CR8-111246, on the docket of

24   this court on August 4, 2011, and was

25   previously convicted of the following

26   felonies:

27         "1) on February 22, 2005, pled

28   guilty to grand larceny, violating

29   Mississippi Revised Statute 97:17-41,

30   under Docket No. 04-5-034-00, on

31   February 22, 2005, in County of Hinds,

32   Seventh Circuit District Court, State of

440

1    Mississippi, and was sentenced to serve
2    ten years with the Mississippi Department
3    of Corrections; that the said Harold Bunch
4    who was charged and convicted in the above
5    described felony violation is the same
6    person that in accordance with the
7    provisions of Revised Statute 15:529.1,
8    the said Harold Bunch should be adjudged a
9    habitual offender and sentenced as a
10   second felony offender, contrary to the
11   form of the statutes of the State
12   Louisiana in such cases made and provided
13   and against the peace and dignity of the
14   same;

15        "Signed, Assistant District
16   Attorney, Parish of Washington,
17   Twenty-Second Judicial District of
18   Louisiana."

19        That is the reading of the habitual
20   offender bill.  Mr. Bunch, you have the
21   right to either stand mute on those
22   charges, plead not guilty or plead guilty
23   as a second offender felony offender.

24        What do you choose to do?  How do
25   you choose to plead?

26   MR. KNIGHT:

27        Not guilty, Judge.

28   THE COURT:

29        All right.  The defendant has pled
30   not guilty.  I would also add, sir, that
31   you have a right to a trial in connection
32   with this matter.  At that trial you have

441

1    a right to be represented by counsel.  The
2    purpose of that trial will be to determine
3    that you are one and the same person who
4    was not only convicted in the case that is
5    before me and that you were sentenced on
6    today, but also one and the same person
7    who was convicted or pled guilty on
8    February 22, 2005, to grand larceny in the
9    state of Mississippi.
10          The purpose, again, would be to
11   determine that you are one and the same
12   person.  And I believe that that covers
13   all of the different things that you are
14   to be notified of.
15          At this time, the Court will set
16   this matter for hearing on the multiple
17   offender bill for my next motion date --
18   which would be in November?  Let's make
19   sure.
20   THE MINUTE CLERK:
21          The 10th.
22   MR. MURRAY:
23          It's going to be the 21st.
24   THE COURT:
25          November 21st is my next motion
26   date, that's the arraignment date?
27   MR. MURRAY:
28          It's an arraignment and motion date.
29   THE COURT:
30          So that matter will be set for
31   hearing on the multiple offender bill for
32   November 21st.

442

1

2

3       CERTIFICATE

4           I, THERESA TRAPANI, CCR, do hereby

5       certify that the above and foregoing is a true

6       and correct transcription of proceedings had

7       before the Honorable William J. Crain, Judge

8       Presiding, Division G, Twenty-Second Judicial

9       District Court, Parish of Washington, State of

10      Louisiana, on October 10, 2011, to the best of

11      my ability and understanding.

12

13              Theresa Trapani

14                                  THERESA TRAPANI, CCR

15                                  OFFICIAL COURT REPORTER

16                                  CERTIFICATE NO. 93047

17

18

19              CERTIFICATE OF FILING

20

21          I hereby certify that the foregoing

22      transcript has been submitted to the Clerk

23      of Court's Office for filing into the record

24      on the 29th day of February 2012.

25

26                                  Theresa Trapani

27                                  THERESA TRAPANI, CCR

28                                  OFFICIAL COURT REPORTER

29

30

31

32

149

1

2                    TWENTY SECOND JUDICIAL DISTRICT COURT

3                          PARISH OF WASHINGTON

4                          STATE OF LOUISIANA

5

6                                              COPY

7          STATE OF LOUISIANA

8          VERSUS

9          HAROLD J. BUNCH              NO. 10-CRB-111246

10

11     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12

13               TRANSCRIPT OF PROCEEDINGS taken before
14       the Honorable William J. Crain, Judge
         Presiding, Division G, Twenty Second Judicial
15       District Court, Parish of Washington,
         State of Louisiana, or **November 21, 2011**, in
16       Franklinton, Louisiana.

17

18

19     APPEARANCES:

20          LEWIS V. MURRAY, III, ESQ.
            (ASSISTANT DISTRICT ATTORNEY)
21

22          JAMES S. KNIGHT, ESQ.
            (FOR HAROLD J. BUNCH)
23

24

25

26

27     REPORTED BY:

28          Theresa Trapani, CCR
            Official Court Reporter
29          Certificate No. 93047

30

31

32            EXhibiT 2

453

All right.

"Twenty-Second Judicial District
Court, October term, 2011, to the
Honorable, the Twenty-Second Judicial
District Court of Louisiana, sitting in
and for the Parish of Washington, comes
now into open court the undersigned
District Attorney of the Twenty-Second
Judicial District of Louisiana, in the
name and by the authority of said State
informs this Honorable Court:  One, that
Harold Bunch, date of birth, 5/7/85;
Social Security, 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; 542 Elliot
Street, Bogalusa, Louisiana 70427; late of
the Parish of Washington, on the 5th day
of October, in the year of our Lord 2011,
in the Parish of Washington, aforesaid,
and within the jurisdiction of the
Twenty-Second Judicial District Court of
Louisiana, for the Parish of Washington,
was found guilty of armed robbery by
violating Revised Statute 14:64 under
Docket No. 10-CR8-111246, on the docket of
this court on August 4, 2011, and was
previously convicted of the following
felonies:

"1) on February 22, 2005, pled
guilty to grand larceny, violating
Mississippi Revised Statute 97:17-41,
under Docket No. 04-5-034-00, on
February 22, 2005, in County of Hinds,
Seventh Circuit District Court, State of

440

Mississippi, and was sentenced to serve
ten years with the Mississippi Department
of Corrections; that the said Harold Bunch
who was charged and convicted in the above
described felony violation is the same
person that in accordance with the
provisions of Revised Statute 15:529.1,
the said Harold Bunch should be adjudged a
habitual offender and sentenced as a
second felony offender, contrary to the
form of the statutes of the State
Louisiana in such cases made and provided
and against the peace and dignity of the
same;

"Signed, Assistant District
Attorney, Parish of Washington,
Twenty-Second Judicial District of
Louisiana."

That is the reading of the habitual
offender bill. Mr. Bunch, you have the
right to either stand mute on those
charges, plead not guilty or plead guilty
as a second offender felony offender.

What do you choose to do? How do
you choose to plead?

MR. KNIGHT:

Not guilty, Judge.

THE COURT:

All right. The defendant has pled
not guilty. I would also add, sir, that
you have a right to a trial in connection
with this matter. At that trial you have

441

1      a right to be represented by counsel.  The
2      purpose of that trial will be to determine
3      that you are one and the same person who
4      was not only convicted in the case that is
5      before me and that you were sentenced on
6      today, but also one and the same person
7      who was convicted or pled guilty on
8      February 22, 2005, to grand larceny in the
9      state of Mississippi.

10          The purpose, again, would be to
11     determine that you are one and the same
12     person.  And I believe that that covers
13     all of the different things that you are
14     to be notified of.

15          At this time, the Court will set
16     this matter for hearing on the multiple
17     offender bill for my next motion date --
18     which would be in November?  Let's make
19     sure.

20  THE MINUTE CLERK:

21          The 10th.

22  MR. MURRAY:

23          It's going to be the 21st.

24  THE COURT:

25          November 21st is my next motion
26     date, that's the arraignment date?

27  MR. MURRAY:

28          It's an arraignment and motion date.

29  THE COURT:

30          So that matter will be set for
31     hearing on the multiple offender bill for
32     November 21st.

364

442

```
 1                          CERTIFICATE
 2
 3              I, THERESA TRAPANI, CCR, do hereby
 4         certify that the above and foregoing is a true
 5         and correct transcription of proceedings had
 6         before the Honorable William J. Crain, Judge
 7         Presiding, Division G, Twenty-Second Judicial
 8         District Court, Parish of Washington, State of
 9         Louisiana, on October 10, 2011, to the best of
10         my ability and understanding.
11
12                              Theresa Trapani
13                         THERESA TRAPANI, CCR
14                         OFFICIAL COURT REPORTER
15                         CERTIFICATE NO. 93047
16
17
18
19                   CERTIFICATE OF FILING
20
21              I hereby certify that the foregoing
22         transcript has been submitted to the Clerk
23         of Court's Office for filing into the record
24         on the 29th day of February 2012.
25
26                              Theresa Trapani
27                         THERESA TRAPANI, CCR
28                         OFFICIAL COURT REPORTER
29
30
31
32
```



OFFICIAL SEAL
THERESA TRAPANI
Certified Court Reporter
in and for the State of Louisiana
Certificate Number  93047
Certificate expires 12-31-12

371

449

STATE OF LOUISIANA

VS.

HAROLD J. BUNCH

NO. 10-CR8-111246

22nd JUDICIAL DISTRICT COURT

PARISH OF WASHINGTON

STATE OF LOUISIANA

FILED _____
          CLERK

## MOTION TO CORRECT ILLEGAL SENTENCE

NOW INTO COURT comes Defendant;

Pursuant to La. C.Cr.P. Art. 882 a motion to correct an illegal sentence can be filed at any time. See *State ex rel Johnson v. Day*, (92-0122 La. 5/13/94); 637 So.2d 1062.

## ERROR

Trial court failed to apply the law in effect at the time of the crime when the court failed to advise Defendant of his United States Constitution Amendment 5th Right to Remain Silent before pleading guilty to the State's Multiple Offender Bill rendered invalid adjudication as multiple offender and the trial court erroneously sentenced Defendant as a multiple offender for an offense not included in the Multiple Offender Bill of Information and also failed to sentence Defendant to hard labor.

## ARGUMENT

Pursuant to Sentence Transcript of October 10, 2011, at the Original Sentence Hearing, the District Attorney filed a Multiple Offender Bill of Information only on the Armed Robbery conviction Docket No. 10-CRS-111246 and a alleged conviction from the State of Mississippi for grand larceny. No other conviction was alleged in the Multiple Offender Bill. See Original Sentence Transcript page 362 – Record page 440.

Defendant contends that on November 21, 2011, a hearing was held on the Multiple Offender Bill the State did not present any evidence. See Relevant parts of the Transcript of the Multiple Bill Hearing Record page 458.

> The Court:
> The purpose of that hearing would be to determine that you are one and the same person who was, who pled guilty to grand larceny in Mississippi. You understand that?

1

Mr. Bunch:
> Nod head affirmatively

The Court:
> And it's your intention here, rather that having a hearing that you want to acknowledge and admit that fact; is that correct?

Mr. Bunch:
> Yes, sir

The Court:
> All right, so you are waiving a hearing. Do you understand that you would have the right to have you counsel assist in that hearing correct?

Mr. Bunch:
> Yes, sir

The Court:
> All right, so you are waiving a hearing. Do you understand that you would have the right to have your counsel assist in that hearing, correct?

Mr. Bunch:
> Yes, sir

The Court:
> And you are waiving that as well?

Mr. Bunch:
> Yes, sir

The Court:
> All right. Based on the acknowledgment of the defendant, stipulation of counsel, I find that Mr. Bunch is one and the same person who pled guilty in No. 045034-00, Hinds County, Mississippi on February 22nd, 2005, and, therefore, find him to be a second felony offender as alleged in the habitual offender bill.
> Since there are no delays applicable to the habitual offender bill at this time the court is going to set aside and vacate the earlier sentence which was a 30 years on the armed robbery and five years on the enhancement. That sentence will be set aside and vacated.
> I am now entering a sentence of 35 years of the habitual offender bill. That sentence is to be served without benefit of probation, parole or suspension of sentence.

Defendant contends at the time of his Multiple Offender Bill hearing, the LAW required the Trial Judge to advise him of the right to remain silent and that right must be waived because the court cannot accept the guilty plea until such right is waived.

See *State v. Hubbard*, 103 So.3d 594 (La. App. 5th Cir. 2012); the Court held: Trial court's failure to advise defendant of his right to remain silent at hearing on State's multiple bill rendered invalid adjudication as multiple felony offender that was based solely on defendant

2

admission of prior felony conviction, . . . Trial court must advise a defendant of his right to remain silent before accepting the defendant stipulation to the allegation of the multiple offender bill. U.S.C.A. Const. Amend. 5Th; LSA-R.S. 15:529.1

Defendant contends the State never filed a Multiple Bill of Information as to the charged conviction La. 14:64.3 use of firearm additional penalty of 5 years. However, the trial court vacated that sentence and sentenced Defendant as a multiple offender on the 30 years armed robbery and the 5 years. That is also illegal. Where the violation of Armed Robbery – La. R.S. 14:64.3 use of firearm, was not included in the Multiple Bill of Information.

Furthermore, the trial court failed to sentence the Defendant to hard labor rendering the 35 year sentence illegal. See *State v. Boyd*, 649 So.2d 80.

Defendant contends where there is a conflict between the transcript and the court minute. See *State v. Spradley*, 722 So.2d 63 (La. App. 1st Cir. 1998). *Transcript Prevail.*

See *State v. Leblanc*, 156 So.3d 1168 (La. 2015); the Louisiana Supreme Court held: illegal sentence as a habitual offender can be filed at any time under La. C.Cr.P. Art. 882.

See Attached October 10, 2011 Multiple Bill Transcript Records pages 426, 440 and the November 21, 2011 Multiple Bill Hearing Transcript Records pages 453 through 462. Attached as Exhibit 1 & 2.

### CONCLUSION

WHEREFORE, the foregoing reason assigned this Motion should be granted and the Multiple Offender Adjudication and Sentence be vacated and the case remanded for resentencing.

Respectfully submitted:

Harold Bunch

Harold Bunch #586582
Camp J
Louisiana State Prison
Angola, Louisiana 70712

## CERTIFICATE OF SERVICE

I defendant certify that a copy of this Motion to Correct An Illegal Sentence has been

served upon the District Attorney's Office at 905 Pearl St., Franklinton, Louisiana  70438, on

this _____ day of _____, 2016.

Harold Bunch #586582

Order

Denied. Petitioner was advised
of the essential rights, including the
right to stand mute as to the allegations.

Scott Gardner

April 7, 2016

A True Copy of Original
Thi_____ 4-14-16
_____ T. Spears
by. Clerk of Court

Serve petitioner

4

IN THE
SUPREME COURT
STATE OF LOUISIANA


DOCKET NUMBER: _____


STATE EX REL. HAROLD J. BUNCH

VERSUS

STATE OF LOUISIANA

---

### WRIT OF CERTIORARI

---

TO THE COURT OF APPEAL, FIRST CIRCUIT, STATE OF LOUISIANA,
NO.: 2016-KW-0594, DENYING PETITIONER'S SUPERVISORY WRIT

---

FROM DENIAL BY THE 22ND JUDICIAL DISTRICT COURT
THE HONORABLE  SCOTT GARDNER JUDGE,
PARISH OF WASHINGTON, NO.: 10-CR8-111246

---

PRO SE PETITION OF HAROLD J. BUNCH


RESPECTFULLY SUBMITTED:

_Harold Bunch_

HAROLD J. BUNCH # 586582
GENERAL DELIVERY
LOUISIANA STATE PRISON
ANGOLA, LOUISIANA 70712

COURT RULES

APPENDIX C. SUPREME COURT OF LOUSISANA
WRIT APPLICATION FILING SHEET

No _____

TO BE COMPLETED BY COUNSEL or PRO SE LITIGANT FILING APPLICATION
TITLE

| | |
|---|---|
| | Applicant:  **Harold J. Bunch** |
| **HAROLD J. BUNCH** | Have there been any other filings in this Court in this matter?  [   ] Yes        [ X ] No |
| VS. | |
| | Are you seeking a Stay Order? NO |
| | Priority Treatment? NO |
| **STATE OF LOUISIANA** | If so you MUST complete & attach a Priority Form |

LEAD COUNSEL PRO LITIGANT INFORMATION

APPLICANT:                                                  RESPONDENT:
Name:  **Harold J. Bunch**                        Name: **District Attorney, 22nd JDC**
Address:  **Louisiana State Prison**         Address: **701 N. Columbia St.**
            **Angola, LA  70712**                                **Covington, LA. 70433**
Phone: _____ Bar Roll No. _____   Phone: _____ Bar Roll No. _____
Pleading being filed: [ X ] In Proper Person.              [   ] In Forma Pauperis
Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they represent.

TYPE OF PLEADING

[   ] Civil        [ X ] Criminal [   ] Bar        [   ] Civil Juvenile        [   ] Criminal Juvenile [   ] Other

ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court: _____        Docket No.: _____
Judge/Commissioner/Hearing Officer: _____        Ruling Date: _____

DISTRICT COURT INFORMATION

Parish and Judicial District Court: **22nd, Washington**        Docket No.: **10-CR8-111246**
Judge and Section:  **Scott Gardner**   Date of Ruling/Judgment: **April 7, 2016**

APPELLATE COURT INFORMATION

Circuit: **First**     Filing Date: _____     Docket No.: **2016-KW- 0594**
Applicant in Appellate Court: **Harold J. Bunch**
Ruling Date: **June 2, 2016**  Panel of Judges: **Higginbotham, Theriot, and Holdridge, JJ. En Banc:**

REHEARING INFORMATION

Applicant: _____ Date Filed: _____ Action On Rehearing: _____
Ruling Date: _____ Panel of Judges: _____ En Banc: [   ]

PRESENT STATUS

[   ] Pre-Trial, Hearing/Trial Scheduled Date: _____ , [   ] Trial in Progress, [ X ] Post Trial
Is there a stay now in effect? NO Has this pleading been filed simultaneously in any other court? NO
If so, explain briefly _____
_____

VERIFICATION

I certify that the above information and all of the information contained in this application is true and correct to the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are attached to this filing. I further certify that a copy of this application has been mailed or delivered to the appropriate court of appeal (if required), to the respondent judge in the case of a remedial writ, and to all other counsel and unrepresented parties.

_____
SIGNATURE

## TABLE OF CONTENTS

TABLE OF CONTENTS_____

APPENDIX C. SUPREME COURT OF LOUISIANA
    WRIT APPLICATION FILING SHEET_____

JURSIDICTION_____ 1

WRIT GRANT CONSIDERATION_____ 1

QUESTION OF LAW_____ 1

APPLICABLE LAW AND ARGUMENT_____ 1

CONCLUSION_____ 2

CERTIFICATE OF SERVICE_____ 3

EXHIBIT[S]

        "A" -- Petitioner's Brief Filed to the Court of Appeal, First Circuit
            NO. 2016-KW-0594

        "B" -- Court of Appeal, First Circuit's ruling
            June 24, 2016

## JURISDICTION

The Louisiana Supreme Court has supervisory jurisdiction to review the adverse ruling of the trial court and the appellate court's denial of application for supervisory writ. See: Article 5 § 5 (A) and 5 (E) of the Louisiana Constitution of 1974.

## WRIT GRANT CONSIDERATION

Petitioner seeks a Writ of Certiorari herein because the Court of Appeal has: 1) erroneously interpreted or applied the constitution and law of this State or the United States and the decision will cause material injustice and 2) so far departed from proper judicial proceedings as to call for an exercise of this Court's supervisory authority. Rule X, 1(a), (4)-(5).

## QUESTION OF LAW

Did the First Circuit Court of Appeal and the 22nd JDC erroneous denied petitioner motion to correct an illegal sentence, and failed to rule on all alleged sentencing errors, in the motion.

## STATEMENT OF CASE

Petitioner filed a motion to correct an illegal sentence that was imposed at a habitual offender sentencing hearing under new ruling by Louisiana Supreme Court in State v. LeBlanc, 156 So. 3d 1168 (La. 2015).

Trial court failed to apply the law in effect at the time of the crime to determine petitioner punishment. Where trial court failed to advise petitioner that he had a right to remain silent before accepting the petitioner plea of guilty, render the adjudication and habitual offender sentence illegal, and trial court failed to rule on all sentencing errors alleged in the motion to correct an illegal sentence. Trial court used the wrong transcript and failed to use the November 21, 2011 multi-bill hearing transcript day of adjudication and sentencing hearing.

## ARGUMENT

See attached Appendix-A Motion to Correct an Illegal Sentence page 1. Error quoted;

## ERROR

Trial court failed to apply the law in effect at the time of crime when the court failed to advise defendant of his United States Constitution Amendment 5th right to remain silent before pleading guilty to the state's multiple offender bill rendered invalid adjudication as multiple offender for an offense not included in the multiple offender and failed to sentence defendant to hard labor.

See attached Appendix-A, page 4, trial court ruling quoted;

1.

## ORDER

Denied petitioner was advised of the asserted rights including the right to stand mute  to the allegation.

Petitioner contends the trial court used the wrong transcript. The multiple bill hearing was held on November 21, 2011. See Attached Exhibit 2. The transcript clearly show the trial court failed to advise defendant of his right to remain silent at the multiple bill hearing held on November 21, 2011 the day he pled guilty to the multiple bill. Also the transcript of November 21, 2011 clearly show the offense of La. R.S. 14:64.3, use of firearm was not charge in the multiple bill of information, but the court also vacated that 5 year sentence and sentence petitioner as a multiple offender on that charge to and failed to sentence petitioner to hard labor.

Petitioner contend the trial court never advise him that he had a United States Constitution 5th Amendment right to remain silent at a multiple bill hearing. Petitioner request this court to review the attached exhibits.

When a person plead not guilty to the multiple bill of information the court cannot come back at a multiple bill hearing and allow that person to plead guilty without advising him of his right to remain silent before the court accept the guilty plea. See, State v. Hubbard, 103 So 3d (La. App. 5th Cir 2012), the court held: Trial court's failure to advise defendant of his right to remain silent at hearing on state's multiple bill rendered invalid adjudication as multiple felony offender that was based soley on defendant admission of prior felony conviction...Trial court mus advise a defendant of his right to remain silent before accepting the defendant stipulation to the allegation of th multiple bill. U.S.C.A. Const. Amend. 5th; LSA-R.S. 15:529.1

Furthermore, the trial court failed to rule on all of the alleged sentencing errors in the motion to correct an illegal sentence. Petitioner contends on November 21, 2011 sentencing hearing the rial court erroneous vacated the previous 5 years sentence under La. R.S. 14:64.3 use of firearm and resentence petitioner as a multiple offender on that charge to. This error was not rule on by the trial court. See, Attached Appendix -A Motion to Correct an Illegal Sentence, page 1, and the trial court ruling on page 4. The charge in the multiple bill of information, See Exhibit -2, November 21, 2011 Multiple bill hearing transcript attached.

## CONCLUSION

Wherefore the reason assigned this should be Granted vacating the multiple bill adjudication and the 35 years sentence imposed.

Respectfully submitted

_____

Harold Bunch # 586582
La. State Prison
Angola, La 70712

CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a copy of the foregoing brief has been forwarded to: the Clerk of
ourt at Louisiana Supreme Court, Supreme Court Building, 400 Royal Street, New Orleans, Louisiana
0130, and  Assistant District Attorney, of the 22rd JDC  by placing same in the United States Mail,
ostage prepaid and addressed this ____5____ day of July, 2016.

Harold Bunch # 586582

IN THE
SUPREME COURT
STATE OF LOUISIANA

DOCKET NO:_____

STATE OF LOUISIANA EX REL
HAROLD BUNCH,
*PETITIONER*

VERSUS

BURL CAIN, WARDEN
LOUISIANA STATE PENITENTIARY,
*RESPONDENT*

*************************************************************************
APPLICATION FOR WRIT OF CERTIORARI TO THE FIRST CIRCUIT COURT OF
APPEAL IN DOCKET NO: 2015 KW 0808 FROM DENIAL OF APPLICATION FOR POST-
CONVICTION RELIEF FILED IN THE 22ND JUDICIAL DISTRICT COURT, PARISH OF
WASHINGTON, DOCKET NO. 10-CR8-111246
*************************************************************************

BRIEF FILED ON BEHALF OF:
HAROLD BUNCH - PETITIONER

HAROLD BUNCH #586582
GENERAL DELIVERY
LA. STATE PENITENTIARY
ANGOLA, LA 70712

## TABLE OF CONTENTS

PAGES NO:

WRIT OF CERTIORARI......................................................................................................1

JURISDICTION.................................................................................................................1

WRIT GRANT CONSIDERATION....................................................................................2

POST-CONVICTION DECIDED ON PROCEDURAL GROUNDS...................................2

TIMELINESS OF APPLICATION.....................................................................................3

PROCEDURAL IMPLICAITONS-ROLE OD STATE POST CONVICTION...................3

STATEMENT OF CASE....................................................................................................5

STATEMENT OF FACTS..................................................................................................5

LAW AND ARGUMENTS.................................................................................................6

CHALLENGE TO TRIAL COURT'S RULING.................................................................6

CLAIM #1...........................................................................................................................7

CLAIM #2...........................................................................................................................8

CLAIM #3...........................................................................................................................9

CLAIM #4.........................................................................................................................10

CLAIM #5.........................................................................................................................11

CLAIM #6.........................................................................................................................12

CLAIM #7.........................................................................................................................13

CONCLUSION.................................................................................................................17

CERTIFICATE OF SERVICE..........................................................................................17

ATTACHMENTS:

APPLICATION FOR POST-CONVICTION-RELIEF AND TRIAL COURT'S RULING:

WRIT OF SUPERVIOSRY TO FIRST CIRCUIT COURT OF APPEALS AND RULING

TABLE OF AUTHORITIES

PAGE NO:

**FEDERAL CONSTITUTION**

5th, 6th, and 14th AMENDMENT to the United States Constitution........................................................1

6th AMENDMENT RIGHT OF CONFRONTATION........................................................................7

FOURTEENTH AMENDMENT............................................................................................10

**STATE CONSTITUTION:**

ART. 5, SECTION 5..........................................................................................................1

ARTICLES 1,2,3,13,16,19,20, AND 22..................................................................................1

**FEDERAL AND STATE STATUTES:**

930.3 (1) OF LOUISIANA CODE OF CRIMINAL PROCEDURE.........................................................2

930.8(A)(1) OF LOUISIANA CODE OF CRIMINAL PROCEDURE......................................................2

924-930.8 OF LOUISIANA CODE OF CRIMINAL PROCEDURE........................................................3

1151 LOUISIANA CODE OF CIVIL PROCEDURE......................................................................3

930.4(F) LOUISIANA CODE OF CRIMINAL PROCEDURE............................................................4

647 LOUISIANA CODE OF CRIMINAL PROCEDURE..................................................................8

RULE 801 FEDERAL RULE OF CRIMINIAL PROCEDURAL............................................................7

**FEDERAL AND STATE CASES:**

BANK OF NOVA v. UNITED STATES, 487 U.S. 250.254 108 S.Ct.2369 23 73, 101 L.ED 228
(1988) 13..................................................................................................................14

BERGER v. UNITED STATES, 295 U.S. 78,55 S.Ct.629, 79 L.ED 1314 (1935)......................................9

CONLEY v.GIBSON, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.ED 2D 80...............................................6

CRAWFORD v. WASHINGTON, 541 U.S. 36 (2004)....................................................................8

DARDEN v. WAINWRIGHT, 477 U.S. 168, 182, 106 S.Ct. 2464,91 L.ED 2D 144 (1986).................10

DAVIS v. WASHINGTON, 547 U.S. 813, 830 (2006)....................................................................8

DELANEY v. UNITED STATES, 263 U.S. 586, 44 S.Ct.206 (1924).....................................................7

DOMINGUE v.BODIN, 996 SO. 2D 645................................................................................6

FALZERANO v. COLLIER, 535 F. SUPP. 800, 803 (D.N.J. 1982).............................................15,16

GLOVER v. CAIN, 128 F. 3d 900 (5TH.Cir. 1997)....................................................................3

HAINES v. KENNER, 404 U.S. 519, 92 S.Ct. 594, 30 L.ed 2d 652(1972).............................................6

MANSON v.BRATHWAITE, 432 U.S. 98, 97 S.Ct.2243, 53 L.ed 2d 140 (1977)...............................12

MARTINEZ v.RYAN132 S.Ct. 1309...............................................................................2,4,13

MATTOX v.UNITED STATES, 156 U.S. 237, 15 S.Ct.337 (1895)........................................................7

MELENDEZ -DIAZ, 557 U.S. ____(2009)..............................................................................8

MOTES v. UNITED STATES, 178 U.S. 458 20 S.CT 993 (1900)..........................................................7

NEPUE v. ILLINOIS, 360 U.S. 264,269,79 S.Ct. 1173,1177, 3L.ED 2D 1217.................................8,10

NEIL v. BIGGERS, 409 U.S. 188, 196, 93 S.Ct. 375, 381, 34 L.ED 2D 410 (1972)..........................12

POINTER v.TEXAS, 380 U.S. 400, 85 S.Ct.1065, 13 L.ED 923 (1985)..............................................7

ROBERT TASSIN Jr., v BURL CAIN, WARDEN, 07-70013 (DECIDED FEBRUARY 14TH, 2008,
U.S. FIFTH CIRCUIT)...................................................................................................8,10

SASSONE v. DOE, 96 So.3d 1243 (La. App. 4th Cir, 2012).........................................................6

SNYDER v. MASSACHUSETTS, 291 U.S. 97 54 S.Ct. 330 (1934).......................................................8

STATE v.DRAUGHTER, 130 SO. So. 855 (2013)....................................................................6

STATE v. HARPER, 646 So.2d 338, 341..........................................................................11

STATE v. HAWKINS, 572 SO. 2D 108 (LA. 1990)..........................................................11

STATE v.JOHNSON, 461 So, 2D 673 (1984)....................................................................11

STATE v.. RICHARDSON, 459 SO. 2D 31, 39 (1984)......................................................11

STATE v.ROYAL, 527 So.1083, 1086 (1988)....................................................................11

STRICKLAND v. WASHINGTON,466 U.S. 668..............................................................11

TREVINO v.THALER,569 U.S. 1-15...............................................................................2,13

U.S. v. CRONIC, 466 U.S. 648..........................................................................................16

UNITED STATES v. MECHANIK, 473 U.S. 66, 70 106 S.Ct 938, 941-42, 89 L.ED.2d 50 (1986)......13

WHITE v. ILLINOIS, 502 U.S. 346,365 (9192)................................................................8

COURT RULES

APPENDIX C, SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET

No._____

## TO BE COMPLETED BY COUNSEL or PRO SE LITIGANT FILING APPLICATION

TITLE

HAROLD BUNCH
VS.

BURL CAIN, WARDEN

Applicant: _Harold Bunch_____
Have there been any other filings in this
Court?    □ Yes   X No

Are you seeking a Stay Order?
Priority Treatment?_____ NO
**If so you MUST complete & attach a Priority Form**

### LEAD COUNSEL PRO SE LITIGANT INFORMATION

APPLICANT:
Name: _Harold Bunch_____
Address: _La. State Prison_____
     Angola, LA 70712_____

RESPONDENT:
Name: _STATE OF LOUISIANA_____
Address: _District Attorney – Parish of Washington__
     Franklinton, LA   70438_____

Phone:_____ Bar Roll No._____   Phone: _____ Bar Roll No._____

**Pleading being filed:** □ X In Proper Person,     □ □ In Forma Pauperis
**Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they represent.**

### TYPE OF PLEADING
□  □Civil,  □ #Criminal,  □ □ R.S.1844 protection, □ Bar, □ Civil Juvenile,  □ Criminal Juvenile, □ Other

□ CINC,   □ Termination,  □ Surrender,   □ Adoption,   □ Child Custody

### ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION
Tribunal/Court: _____   Docket No._____
Judge/Commissioner/Hearing Officer: _____ Ruling Date:_____

### DISTRICT COURT INFORMATION
Parish and Judicial District Court: _Washington, 22nd JDC__ Docket No. _10-CRS-111246___
Judge and Section:_____ Date of Ruling/Judgment: No. _12/2/14__

### APPELLATE COURT INFORMATION
Circuit: _First Circuit_____  Docket No. _2015 KW 0808_____ Action: Denied
Applicant in Appellate Court: _Harold Bunch_____Filing Date: __12/20/14__
Ruling Date: 8/21/15_____ Panel of Judges: McDonald, McClendon, Theriot  En Banc: _____

### REHEARING INFORMATION
Applicant:_____Date Filed:_____Action on Rehearing:_____
Ruling Date: _____ Panel of Judges: _____ En Banc: □

### PRESENT STATUS
□ Pre-Trial, Hearing/Trial Scheduled Date: _____, □ Trial in Progress, X Post Trial
Is there a stay now in effect? _no____ Has this pleading been filed simultaneously in any other court? _no
If so, explain briefly:

### VERIFICATION
I certify that the above information and all of the information contained in this application is true and correct to the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are attached to this filing. I further certify that a copy of this application has been mailed or delivered to the appropriate court of appeal (if required), to the respondent judge in the case of a remedial writ, and to all other counsel and unrepresented parties.

_____                          _____
DATE                                                           SIGNATURE

## WRIT GRANT CONSIDERATION

It is respectfully submitted that the Louisiana First Circuit Court of Appeal has erroneously decided seven (7) significant issues of law which should be resolved by this Court as the Court of Appeal has sanctioned a departure from proper judicial proceeding by the Twenty-Second Judicial District Court where it denied petitioner's post-conviction application. In this case, the last written ruling by the trial judge fails to apply controlling case law from the United States Supreme Court and the proper standard of review to the merits of the claims that entitled petitioner to the requested relief.

The seven claims presented for review involves (1) confrontation; (2) knowing use of false testimony ; (3) prosecutorial misconduct; (4) suggestive identification; (5) denial of right to present defense and (6) ineffective assistance of counsel.

The seriousness of these claims involves a total disregard for petitioner's constitutional rights and should not have been denied by the trial judge, without first, conducting an evidentiary hearing and reviewing testimony and evidence that will support petitioner was denied a fair trial.

Considering the facts the record was not review by the First Circuit Court of Appeal as to such constitutional violations and the trial court failed to apply the proper standard of review to the merits of petitioner's claims, this Court should grant certiorari and remand this matter for an evidentiary hearing, or in the alternative, review the merits of petitioner's claims and issue a written ruling.

IN THE
SUPREME COURT
STATE OF LOUISIANA

HAROLD BUNCH,
        Petitioner,

DOCKET NO.

VERSUS

FILED: _____

N. BURL CAIN, Warden,
Louisiana State Penitentiary,
     Respondent.

_____
CLERK OF COURT

WRIT OF CERTIORARI

NOW INTO THE COMES, **Harold Bunch**, petitioner hereinafter, before this Honorable Louisiana Supreme Court, challenging the trial court's attached ruling and he will be recognized as "petitioner" in proper person, as well as, the District Attorney's Office will be recognized as the "state". Pursuant to the **5th, 6th, and 14th Amendments of the United States Constitution and Articles 1, 2, 3, 13, 16, 19, 20, and 22, of the Louisiana Constitution** and other law(s) set forth below, petitioner avers that his request for Post-Conviction Relief should have been granted by the trial court. In the alternative, testimony should have been taken on whether petitioner's application was immunized against procedural bars due to the substantive nature of the claims raised.

## JURISDICTION

The Supervisory Jurisdiction of this Honorable Court derives from the *Art. 5, § 5,* of the Louisiana Constitution of 1974, as amended, and the Rules of the Louisiana Supreme Court.

1

### PCR DECIDED ON PROCEDURAL GROUNDS; JUDGEMENT ERRONEOUS, UNDERLYING MERITS NOT REVIEWED ON DUE TO ERRONEOUS DECISION

Petitioner maintains that the procedural ruling of the trial court runs afoul of the Constitution and is worthy of further review by this court for correctness. A more relevant question is : "Whether the trial court, in the first instance has standing to invoke a procedural bar where both state appellate courts and the controlling Federal Circuit Court of Appeals have held the same procedural bars inapplicable to claims of incompetency. Petitioner avers that since he was mentally incompetent at the time of trial, and trial counsel ignored relevant evidence of petitioner's mental incapacity to proceed and incapacity during the period of the alleged offense:

> "The conviction against him was obtained in violation of the
> United States Constitution; Constitution of the State of
> Louisiana and the Louisiana Code of Criminal Procedure
> Article 930.3(1)."

Petitioner hereby avers that the he has been deprived of constitutional protections due to him, and the trial court sat in observation of these deprivations and now that these claims have been presented to the trial court for full consideration, the trial court has rejected the application of both State and Federal Constitutional Protections to this petitioner as one accused of a crime.

In an effort to present the evidence of "facts previously not known to petitioner" pursuant the exceptions of *La.C.Cr.P. Art. 930.8(A)(1)*, petitioner took into consideration the fairness due to the state to afford the parties an evidentiary hearing so that the details of the claims could be further developed. In total contradiction of the controlling statutory provisions, the trial court simply denied relief without a hearing and in wanton disregard for the actual intent and working of the post-conviction process.

The "facts" and "issues" presented to the trial court in the post-conviction warranted further development of the record prior to any final decision being rendered by the trial court. As a result of the trial court's denial, petitioner has no alternative other than to invoke the supervisory authority of this Honorable Appeals Court to review cases which originate in it's circuit. It is the belief of petitioner that the only way that the record coming before the court would be adequate for review is if this case was remanded to the trial court with orders to conduct an evidentiary hearing on those issues and evidence which are in controversy.

For the purpose of achieving the objectives of the State and Federal Constitution, it is requested that **petitioner be afforded all rights due him** pursuant to the *Constitution of the*

2

*United States* and the *Louisiana Constitution of 1974.* Petitioner further invokes [with particularity] his procedural rights due pursuant *Louisiana Code of Criminal Procedure Article 924* et., e.g..., and his guarantee to *"Due Process"* and *"Equal Protection"* under the banner of the *Louisiana and United States Constitution.*

The petitioner, at present, moves this Honorable Court to grant leave for supplementation and/or amendments to the application by the petitioner and/or the attorney appointed in this case pursuant the United States Supreme Court holding in *Martinez v. Ryan, Trevino v. Thaler,* and the *Louisiana Code of Civil Procedure Article 1151.*

## TIMELINESS OF APPLICATION

The claims raised herein fall in accordance with the statutory requirements of *924-930.8 of the Louisiana Code of Criminal Procedure*, in that, it is within the State's time bar procedure. Glover v. Cain, 128 F.3d 900 (5th Cir. 1997). The Court held: Louisiana statute providing that prisoners had to seek Post-conviction relief within two years after judgment of conviction and sentence became final was independent and adequate state procedural rule. Petitioner is in compliance therewith.

## PROCEDURAL IMPLICATIONS - ROLE OF STATE POST CONVICTION

In theory, those convicted of crimes still have remedies even if their convictions have been affirmed on direct appeal. The writ of habeas corpus, originally preserved by the federal constitution has an analogous counterpart in every state constitution. The State Post-Conviction relief procedure reviews the legal errors that may have occurred at trial and allows for expansion of the record where the original transcript does not reflect potential constitutional error. Indeed, state post-conviction is often the first time a court hears claim of **ineffective assistance of counsel, prosecutorial misconduct, jury irregularity,** or facts discovered subsequent to or after trial that support the petitioner's conviction was obtained in violation of the Constitutions of the United States or Louisiana. Through time and custom, state post-conviction remedies are required to be brought to the state's court attention and exhausted before any federal habeas review will take place.

If this Court considers any of these claims procedurally defaulted prior to reaching the merits, this Court must find he (petitioner) was denied ineffective assistance of counsel on

3

appeal. Further, petitioner has also submitted his reasons through this pleading sufficient to warrant the relief requested and the appointment of counsel to help properly present the claim of ineffective assistance of trial counsel in this first direct-appeal on this particular claim (that would have been the initial post-conviction proceedings in this matter). However, when raised, petitioner was again denied his substantive and fundamental right to counsel in this initial post-conviction direct appeal of that claim. Therefore, this constituted a constructive denial of counsel at a critical stage in the proceedings (direct appeal of the ineffective-assistance of counsel claim) which cannot be overlooked.

Recognition of the combination of direct appeal and post-conviction claims of ineffective assistance of counsel claims was first fully explained in *Martinez v. Ryan*. This dual/mixed pleading of a direct appeal and post-conviction claim(s) of the ineffective assistance of trial counsel claim/application for post conviction is sufficient to comply with the provisions of *La.C.Cr.P. art. 930.4F.* Therefore, ineffective assistance on the part of appointed trial counsel or appointed appellate counsel constitutes external objective factors created by the State. Further, because these are causations which the state had control of, the state has to forego any/all procedural defenses because it is the author of the procedural default. The state cannot withhold a substantive right, such as the right to counsel on direct-appeal of a claim, then argue that the petitioner failed to meet the threshold requirements of proving the claim when it denied him the means to do so.

As said many times over, by members of the judiciary, "the state is at fault for the deprivation and its effects." Beyond this, the state is unilaterally responsible for refusing to provide petitioner with counsel to assist in perfecting his claim of ineffective assistance of trial and appellate counsel, and the state is also responsible for having deliberately deprived petitioner of his substantive right to counsel when he attempted to perfect the claim of ineffective-assistance-of-counsel during the initial post-conviction/direct appeal proceeding wherein he would have perfected this claim and for these counsels having failed to raise the violation of petitioner's rights when the composition of the indicting grand jury composition was composed in violation of the mandates of law federal law.

4

## STATEMENT OF THE CASE

Petitioner and two co-defendants were charged by Bill of information with one (1) count of armed robbery and one count of possession of a firearm during the commission as a qualifier for an additional penalty. Petitioner pled not guilty, but was convicted, after a jury trial on both counts. Several post trial motions were filed (i.e. motion for new trial, motion in arrest of judgment, and for post-verdict judgement of acquittal. All such much motions were denied. On count one, a sentence of thirty years was imposed without benefits was imposed. On count two, an additional sentence of five years without benefits was imposed.   Habitual offender proceedings were conducted and petitioner stipulated to being a second felony offender, both initial sentences were vacated and imposed a sentence of thirty-five years without the benefits of parole, probation, and suspension of sentence..

On February 22, 2013 the Fifth Circuit Court of Appeal affirmed defendant's convictions, habitual offender adjudication and sentence.  *State of Louisiana v. Harold Bunch*, 2013 WL 675542 (La. App. 1 Cir. 2/22/13).  Defendant timely filed a writ of certiorari in the Louisiana Supreme Court. The Supreme Court denied relief on October 11, 2013.

## FACTS OF THE CASE

On November 9, 2010, in Bogalusa, La, Tony Robertson and Wade Inzinna were driving around town when they began to discuss setting up "a lick," commonly known as a robbery. The two discusses the probability of robbing a man names James Singletary, whom both men knew. Prior to the commission of the robbery, the two men picked up a third person to facilitate the robbery.

It is the true identity of the third person which is the primary focus of this litigation, but there are other equally important issues. Once the intended victim was picked up, he was driven to a location behind a Laundromat as opposed to the convenience store at he had requested. Once behind the store it appeared as those their was going to be a sale of some stolen clothing. The sale did not pan out and the subsequent robbery of the victim James Singletary is the cause for this litigation, and this petitioner is challenging the fact that he was mistakenly chosen as one of the parties who participated in the robbery. The underlying facts will prove petitioner to not have been involved in this robbery and that the only reason he was selected as the third person was due to coercion of state witnesses and suggestive photographic line-up procedures.

5

## LAW AND ARGUMENTS

### PRO SE PLEADINGS ARE TO BE HELD TO LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS

The law, as it is presently exists does not hold a pro se prisoner to the high standards in which attorneys are held to. Further, the pro se prisoner is to be given the benefit of any favorable doubts regarding his pleading, because he may suffer from an inability to articulate what is really wrong in his case. Most importantly, this is how the United States Supreme Court addressed the issue in *Haines v Kenner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

> "A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-52, 92 S.Ct. At 596, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957).

Under this settled-principle of law, this Honorable Court is duty-bound to permit the development of the underlying facts of this case. Petitioner, **hereby invokes his right to be held to a less stringent standard which provides that his pleading** "can only be dismissed for failure to state a claim if it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'." Plaintiff contends that precedent of the United States Supreme Court regard pro se pleadings is binding.

### CHALLENGE TO TRIAL COURT'S RULING

Petitioner urges that the trial court's ruling is reviewable de novo by this Honorable Court. State v. Draughter, 130 So.2d 855 (La. 2013). Also, erroneous interpretations of the law is reviewed de novo on appellate review Domingue v. Bodin, 996 So.2d 645 (La.App. 3rd Cir. 2008). When reviewing questions of fact as determined by the fact finder, be it a jury or judge, appellate courts utilize the manifest error or clearly wrong standard of review. Sassone v. Doe, 96 So.3d 1243 (La. App. 4th Cir. 2012). Petitioner contends that the trial courtr's ruling in this instance suffers from both deficiencies.

Petitioner challenges the trial court ruling as involving a decision which involves a clearly erroneous determination of the fact, and abuse of discretion by not appointing counsel and

6

## CLAIM NO. #1

**Ben's wife out of court statement got Mr. Bunch a warrant for his arrest because she told police officer that Mr. Bunch go by the street name Mutha and also, Hot Boy. Ben in Zinna wife did not testify at Mr. Bunch trial or was they a written statement in open court and the D.A. still used her statement in Mr. Bunch trial and on Mr. Bunch appellate brief. 6th Amendment and 14th Amendment.**

The petitioner contends that the trial court' ruling was erroneous, and this decision is constitutionally unsound. Again the prosecutor puts the strength of judicial decision behind him to drive home this hearsay testimony regarding what the wife of Ben Innzinna supposedly told the officers. The prosecutor once more urges upon the jury that behind the action of the officers is a judicial decision  (The issuance of a warrant) which upholds everything that he and the officers are saying.

Petitioner has never been confronted with certain witnesses involved in the case, yet, statements attributed to them have been used to convict him. This constitutes a "Classic Violation" of the right to confrontation. <u>Everything concerning this incident came from   a Detective who admittedly narrated to the jury the stories of other witnesses and officers.</u>  Trial Counsel failed to protect the petitioner's *6th Amendment right of confrontation* (thus counsel was ineffective here under <u>Strickland v.  Washington</u>) This is true because counsel failed  to require the cross examination  of witnesses, and to compel attendance of witnesses, as found in <u>Pointer v. Texas</u>, 380 U.S. 400, 85  S.Ct. 1065, 13 L.Ed.2d 923 (1985), and failed to protect petitioner's rights as extended to similarly situated defendants (equal protections and due process).

It is a federal constitutional right of the constitution's *Sixth Amendment* for an accused to be confronted by the witnesses against the accused, thus, failure to grant an accused this right, would be a violation of the confrontation clause of the federal constitutions *Sixth Amendment*, under the federal criminal code and rules *"Rule 801"* An accused is entitled to have the witnesses against him testify under oath, in the presence of  himself, and trier,  subject to cross-examination; yet considerations of public policy and necessity require the recognition of such exceptions, as dying declarations and former testimony of witnesses. <u>Mattox v. United States</u>, 156 U.S. 237,15 S.Ct 337 (1895),   <u>Motes v. United States</u>, 178 U.S. 458 20 S.Ct 993(1900). <u>Delaney v. United States</u>, 263 U.S. 586, 44 S.Ct 206 (1924).

7

matters *is* <u>United States v. Mechanik</u>, 475 U.S. 66, 70 106 S.CT. 938, 941-42, 89 L.Ed.2d 50

(1986) in which the Supreme Court held that:

> "A subsequent conviction on an indictment made harmless the error of having two witnesses testify before a grand jury simultaneously, we stated that while a grand jury's function is to prevent a defendant from having to defend against a crime for which there is no probable cause, a petit jury's guilty verdict establishes both probable cause and guilt. " Porter, 805 F.2d at 941.

It should be noted that the aim of the creation of the Grand Jury was protection to protect

citizens from Royal tyranny, unfounded accusations and harassment. The final goal was to

remove undue influence or the arraignment of charges being brought by interested persons

charges that may be unwarranted. The more suitable case which could be applied to the instant

set of facts is the standard articulated by Hon. Justice O'Connor in <u>Bank of Nova Scotia v.</u>

<u>United States</u>, 487 U.S. 250, 254 108 S.CT. 2369 2373, 101 L.Ed.2d 228 (1988) was free from

the substantial influence of such violations.

Here, the petitioner's case went to the trial jury whereby the prosecutor had urged that the

defendant committed one of the most heinous crime.

Through stratagem, pure ineffectiveness on part of the defense counsel and pure

stratagem on part of the prosecutor. This is tantamount to Trail Jury Fixing or Rigging against

the accused. At the time the Trial jury took up this case, the prosecutor knew the following:

> 1.) that there was one vote towards the prosecution with no effort of persuasion or presentation of evidence or witnesses testimony being presented.
>
> 2.) That the prosecution had someone on the Trial Jury who could relay to the remaining Jurors inside information which did not come from the testifying witnesses or the evidence presented.
>
> 3.) The Trial Jury process was thwarted from functioning as a tool of Administering Justice. Instead, the Trial Jury became a tool of vengeance and opportunity for the parties who gave false testimony against the accused. And it became another notch on the belt for the prosecution.

Although it may be alleged that bias in this instance can only be speculated, petitioner

contends that as long as there exists room to indulge in this speculation, the Trial Jury Process as

applied to the instant case is unconstitutional. Furthermore there are facts here to consider:

> 1.) Ms. Louise Jackson[2] was on the Trial Jury which convicted petitioner.

---

2

If this name (Ms. Louise Jackson) proves to be error, then such an error was clearly subject to amendment had the trial court appeal licensed experience counsel. Long before anyone chose to cut back on prisoner access to courts, some courts had expressed the opinion that even a complete library would not provide the inmate with much chance of success: "In this court's view, access to the fullest law library anywhere is a useless and meaningless gesture in terms of

14

All across America, innocent people are languishing in prison, Louisiana is leading the charge with innocent people incarcerated. And here we are again where the State of Louisiana seeks to maintain the incarceration of yet another innocent victim. The state of Louisiana bought testimony in return for lenient sentences and this all occurred at the expense of petitioner. Declarations of innocence Immunize a post-conviction proceeding against procedural bars and the same is invoked herein. Petitioner has a *Sixth* and *Fourteenth Amendment* right to the protection of his rights by the presiding Judge, the Prosecutor (dual-responsibility) and his defense attorney. When the justice system fails an innocent person and deprives him of his freedom unjustly, society is injured in addition to the injury imposed upon the innocent victim. At a minimum, counsel would have or should have brought in some witnesses who knew the defendant and could have testified about how long petitioner has had his tattoos and what distinguishes him from other people. (Strickland v. Washington violation) had counsel called in some witnesses on his client's behalf, surely, the jury could have easily been swayed to return a different verdict. Had counsel specifically asked the jury to look at the accused and determine for themselves what is most memorable about his appearance when they looked away, surely it would have been his facial tattoos, however this viable tactic was not use by counsel.

## CLAIM NO. #7

**Mr. Bunch lawyer at sentence hearing Mr. Lawyer told the courts on record. That he had committed Ineffective assistance of counsel for leaving a family member and Juror on Mr. Bunch's, trial jury after she stated that she knew the victim.**

Please note petitioner acknowledging that typographical errors appear in the original Memorandum of Law submitted to the trial court.[1] Despite these typos, had petitioner been afforded to the protective measure of counsel as envisioned by Martinez v. Ryan and Trevino v. Thaler, all such errors could have been removed and this matter properly reviewed by tghe trial court. It is a deprivation of one's right to a fair trial and impartial jury when a defense attorney knowingly allows a party specifically interested in the outcome of a case to remain on the jury. The Federal Jurisprudence which currently controls this grey area of law does not address the questions urges by the instant petitioner. The primary case often relied upon to resolve similar

[1]Petitioner having read back over his pleadings acknowledges that in those sentences where the term "Grand Jury" appeared, that should have read "trial jury" and where the term indictment was mentioned, it should have been "bill of information". Despite these two typographical errors, there was a sufficient factual basis submitted for the court to decipher the proper context of the claim and if any confusing arose, the court was empowered to give petitioner notice of the need for any clarification to ensure that all claims were given there requisite constitutional review.

13

Beginning with <u>Snyder v. Massachusetts</u>, 291 U.S. 97 54 S.Ct 330 (1934). The court began to speak of <u>confrontation as a aspect of procedural Due Process</u>, thus, extending it's applicability to state cases and to federal cases other than criminal. In the instant case, the petitioner contends that his *Sixth Amendment* right of confrontation was violated when the trial court permitted some officers to testify (as substitutes).

The right to confront and cross-examine is paramount under these circumstances, this right is clearly and unequivocally expressed in the unambiguous language of *La.C.Cr.P. art. 647* and cases such as <u>Crawford</u>, 541 U.S. 36 (2004), <u>Davis v. Washington</u>, 547 U.S. 813, 830 (2006), <u>Melendez-Diaz</u>, 557 U.S. _____ (2009) and <u>White v. Illinois</u>, 502 U.S. 346, 365 (1992).

<div align="center">

## CLAIM NO. #2
</div>

**Mr. Bunch did not get a fair trial. Officer Kendall Bullen lied on the stand under oath Mr. Bunch lawyer ask him did he ask the victim about gold teeth are tattoos his statement was no it was not him ask that but the video tape show that the detective was telling a lie. The tapes show Mr. Detective Bullen face asking the victim Mr. Bunch was refused for jury to see the video tape it proves that Mr. Bunch did not have a fair trial.**

## KNOWINGLY USE OF FALSE TESTIMONY

With respect to the foregoing claim, most recently, the federal judiciary has reaffirmed its position demanding accountability for the known use of false testimony. This was done in <u>Robert Tassin, Jr. v. Burl Cain</u>, Warden, 07-70013, (decided February 14, 2008, U.S. Fifth Circuit) and therein the fundamental protections set out in <u>Napue v. Illinois</u>, 360 U.S. 264, 269, 79 S.CT. 1173, 1177, 3 L.Ed.2d 1217 (1959), (Government "may not knowingly use false evidence, including false testimony") was thoroughly re-affirmed.

Petitioner's claim of the state's known use of False Testimony going before the jury was not raised on direct appeal because there was no issue made of the matter during trial, and claims which are not urged during the trial court proceedings or objected to "pursuant Louisiana's notorious contemporaneous objection rule" cannot be availed on direct appeal. Thus, this claim "requires a merits determination"

A strict review of the trial court record reveals that the testimony of the state's witnesses, along with the state's exhibit's, particularly the Officer Kendall Bullen lied on the stand under oath Mr. Bunch's defense attorney asked Officer Bullen did he question victim about gold teeth or tattoos, the officer's response under oath was "NO" he was not the one who asked that, however, there was a video tape their and in court which would prove this testimony to be false,

<div align="center">

8
</div>

however the video was not allowed to be played to that the "false testimony" could be relied upon by the trial jury in determining guilt ore innocence of the accused. The video tape shows Detective Bullen's face while he asked the victim, "Does Mr. Bunch have Gold Teeth or Tattoos?"

<center>CLAIM NO. #3</center>

**D.A. lies to the jury about the video tape when Mr. Bunch lawyer ask. The judge to play the tape D.A. stated was he did not have nothing to play it on. Mr. Bunch lawyer stated well I see a T.V. and DVD player right there. Mr. Bunch rights were violated as a constitutional matter.**

Again in the case of <u>Robert Tassin, Jr. v. Burl Cain</u>, Warden, 07-70013, (decided February 14, 2008, U.S. Fifth Circuit), the fundamental protections set out in <u>Napue v. Illinois</u>, 360 U.S. 264, 269, 79 S.CT. 1173, 1177, 3 L.Ed.2d 1217 (1959), (Government "may not knowingly use false evidence, including false testimony") were thoroughly re-affirmed. This D.A. while acting under his personal Oath of Office as provided for in *La. Const. Art. X, § 30*, made a material false statement of fact.

Petitioner's asserts that the prosecutor committed "prosecutorial misconduct" prejudicial to the administration of justice when he deliberately and knowingly made the false statement of material fact that, as to the video evidence, he had nothing to play it on for the jury to watch. Defense counsel objected and declared the matter right there before the court and the court said that if would not let the jury see the tape. Thus, the court itself actually partook in the deprivation of petitioners constitutional rights afforded him by the Constitution of the United States. This claim of the state's known use of False Testimony (because the prosecutor was actually indirectly testifying before the jury) and he is under oath at all times in his active duties), this was not raised on direct appeal because there was no issue made of the matter during trial, and claims which are not urged during the trial court proceedings or objected to "pursuant Louisiana's notorious contemporaneous objection rule" cannot be availed on direct appeal. Thus, this claim, "requires a merits determination" as well

The United States Supreme Court has long ago established that it is the prosecutor's duty to refrain from improper conduct in the course of a criminal prosecution. <u>Berger v. United States</u>, 295 U.S. 78, 55 S.CT. 629, 79 L.Ed.2d 1314 (1935). However, prosecutorial misconduct violates the constitutional rights of an accused if it either infringes upon a specific constitutional right or so infects the trial with unfairness as to make the resulting

<center>9</center>

conviction a denial of due process." Donnelly v. Dechristoforo, 477 U.S. 637, 643, 94 S.CT. 1868, 40 L.Ed.2d 431 91974); in accord with Darden v. Wainwright, 477 U.S. 168, 182, 106 S.CT. 2464, 91 L.Ed.2d 144 (1986), even if a prosecutor misconduct does not infringe upon a specific constitutional right it can still violate the due process clause of the United States Constitution by rendering the underlying trial "fundamentally unfair", Darden, 477 U.S. 182-183, 106 S.CT. 2464.

In this case, the petitioner contends that prosecutorial misconduct violated his *Fourteenth Amendment* right to due process.

<div align="center">CLAIM NO. #4</div>

**Detective Wendell O'Berry lied on the stand under oath when he stated Ben said Mr. Bunch had 4 tear drop video shows Ben did not say what Detective Wendell O'Berry stated. Then Mr. Wendell stated Ben said, "Mr. Bunch had what's next on his eye-lids, Ben stated on video tape he had" who next" what's next is not what he said, the video tape can prove everything as to how Mr. Bunch was rail-roaded. And the court's refusing the defense an opportunity to show the video to the jury to see the video proving this deprived petitioner of his right to a defense.**

With respect to the foregoing claim, most recently, the federal judiciary has reaffirmed its position demanding accountability for the known use of false testimony. This was done in Robert Tassin, Jr. v. Burl Cain, Warden, 07-70013, (decided February 14, 2008, U.S. Fifth Circuit) and therein the fundamental protections set out in Napue v. Illinois, 360 U.S. 264, 269, 79 S.CT. 1173, 1177, 3 L.Ed.2d 1217 (1959), (Government "may not knowingly use false evidence, including false testimony") was thoroughly re-affirmed. The constitutional protections pursuant the *14th Amendment* and the *Sixth Amendment* require that the State of Louisiana not knowingly solicit false testimony for the purposes of securing a conviction, nor can the State of Louisiana allow known false testimony to go uncorrected. To do so impugns the accused right to a defense and it further perverts the truth seeking function of the trial mechanism.

Petitioner's claim of the state's known use of False Testimony going before the jury was not raised on direct appeal because there was no issue made of the matter during trial, and claims which are not urged during the trial court proceedings or objected to "pursuant Louisiana's notorious contemporaneous objection rule" cannot be availed on direct appeal. Thus, this claim "requires a merits determination"

A strict review of the trial court record reveals that the testimony of the state's witnesses, along with the state's exhibit's, particularly the Detective Wendell O'Berry lied on the stand

<div align="center">10</div>

under oath Mr. Bunch lawyer defense attorney asked Detective Wendell O'Berry did he question victim about tattoos on his eyelids, the officer's response under oath was that the Ben Inzinna said Mr. Bunch had "what's next" on his eyelids  Detective Wendell O'Berry lied on the stand under oath when he stated Ben said, "Mr. Bunch had 4 tear drops" in his face.  However, the video shows Ben did not say what Detective Wendell O'Berry stated. Then Mr. Wendell stated Ben said, "Mr. Bunch had "what's next" on his eye-lids, Ben stated on video tape that Mr. Bunch had "who next." Thus, the video shows that "what's next" is not what he said, the video tape can prove how Mr. Bunch has been rail-roaded.  Although readily available to prove this testimony to be false; the video was not allowed to be played to that the "false testimony" could be relied upon by the trial jury in determining guilt or innocence of the accused. The video tape shows Detective Wendell O'Berry face while he asked the victim, "Does Mr. Bunch have Tattoos on his eye-lids or in his face?"

## CLAIM NO. #5

**Mr. Bunch, line up was a suggestive line up it shows 6 photos Mr. Bunch #5 everybody head on it was big like a basket ball Mr. Bunch head was like a seed. And that's a suggestive line up The trial court erred by failing to grant Defendant motion to suppress the identification because the identification was improperly and unconstitutionally suggestive.**

Your petitioner herein maintains that photo-graphic array which was presented to the witness was unduly suggestive. State v. Johnson, 461 So.2d 673, 674 (La.App. 1 Cir 1984). All the suspects in the line-up shown in this case had very large head or they where magnified and re-copied, yet, petitioner's head and photograph was made to look small in due comparison, thereby drawing direct attention to his photograph.

Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification.  State v. Richardson, 459 So.2d 31, 38 (La.App. Cir. 1984).  Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Royal, 527 So.2d 1083, 1086 (La.App. 1 Cir.) writ denied, 533 So.2d 15 (La.1988). Single photograph identifications should be viewed in general with suspicion. State v Harper, 646 So.2d 338, 341 (La.1994). An identification is unduly suggestive if during the procedure, a witness's attention is focused on the defendant. State v. Hawkins, 572 So.2d 108, 112 (La.App. Cir. 1990).

11

With regard to in-court identifications, the standard to be used for determination of admissibility is whether, under the totality of the circumstances, the suggestive identification procedure led to a substantial likelihood of irreparable misidentification. With the deletion of the word "irreparable," the standard serves as well for admissibility of testimony concerning out-of-court identifications. Neil v. Biggers, 409 U.S. 188, 196, 93 S.CT. 375, 381, 34 L.Ed.2d 410 (1972).

In Manson v. Brathwaite, 432 U.S. 98, 97 S.CT. 2243, 53 L.Ed.2d 140 (1977). In *Manson*, the court considered these five factors in determining whether the identification was suggestive: *(1)* the witness's opportunity to view the defendant at the time the crime was committed; *(2)* the degree of attention paid by the witness during the commission of the crime; *(3)* the accuracy of any prior description; *(4)* the level of the witness's certainty displayed at the time of identification; and *(5)* the length of time elapsed between the crime and the identification.

Applying the *Manson* factors to the present case it is easy to find that the identification procedure did produce the likelihood of misidentification.

## CLAIM NO. #6

Victim Mr. James stated in police report he did not know the third person, he explained that he never seen him before, not a day of his life. Also, he knew nothing about gold teeth or tattoos. And the robbery occurred in the day time and the sun was out. Mr. Bunch has a face full of tattoos, In addition to the multiple gold teeth In this mouth. The picture the victim picked out on the line was Mr. Bunch. Mr. Bunch was 20 years old in that picture and had no tattoos in his face and no braids in his head. Additionally, the victim did not sign and date the back of Mr. Bunch photo. And when the officer asked Mr. James did the person who robbed you have gold teeth or tattoos he stated "No, he did not." and he said he was positive of that. The video tape has one story the police report has another story and at the time of trial, the was a great deal of deception and story changing. For this reason, the refusal to allow the video to be played, constituted the deprivation of the right to a defense and a fair trial. Mr. Bunch is now in prison for something he did not do. In trial the victim said, "I am a 100% sure that's the guy, I don't no nothing about no tattoos or gold teeth." He also said, "I can't forget Mr. Bunch eye-balls. Noticeably, there is nothing significant about Mr. Bunch's eyes. There are no distinguishing traits about them, the only significant thing is that he has the tattoos by his eyes. The video shows everything, Mr. Bunch is innocent and did not rob Mr. James.

Mr. Bunch contends that he has been denied all the fundamental protections of an accused as set forth by the *Constitution of the United States*. Despite it's sovereignty, a state is not at liberty to just arrest and incarcerate an innocent person for a Crime someone else has committed, especially when there is sufficient proof that the innocence of the accused is paramount.

Claim
NO# 3

JAMES SINGLETARY

1  A.    No.  I do remember him asking that question.
2  Q.    Do you recall what your thoughts were at the
3  time or what your answer was at the time?
4  A.    I was too scared of the gun.
5  Q.    "I don't remember seeing anything like that,"
6  is that a possible answer?
7  A.    I don't remember seeing anything like that.
8  Q.    All right.
9       MR. KNIGHT:
10               I'd like to play the video on the
11          portions that I'm talking about to refresh
12          the witness' mind.
13      THE COURT:
14               Any objection?
15      MR. MURRAY:
16               Um.
17      MR. KNIGHT:
18               It should take about a minute if we
19          can go to the exact point in the video.
20      MR. MURRAY:
21               Other than I have nothing to play it
22          with.
23      MR. KNIGHT:
24               I'm getting close to being done
25          here, Judge, but I'd like finish now.
26      THE COURT:
27               Well, I mean, we don't have anything
28          to play it on.
29      MR. MURRAY:
30               I understand there's a DVD player in
31          the other room right there.
32      THE WITNESS:

228

Exhibit                                    306

JAMES SINGLETARY

1          The question is do I remember the
2          cop asking me does he have gold teeth or
3          do I remember seeing any gold teeth?
4          Because I do remember the cop asking me.
5     BY MR. KNIGHT:
6  Q.   I'm asking about your statements made at the
7  time to the officers to determine what you said then.
8     MR. MURRAY:
9          I'm not actually certain that
10         there's been any -- the witness has
11         answered in such a fashion that it does
12         not allow, I don't think, under the
13         evidence codes to play or read any prior
14         statement at this point.
15    THE COURT:
16         That an objection?
17    MR. MURRAY:
18         That's an objection.
19    THE COURT:
20         Sustained.
21    MR. KNIGHT:
22         Judge, obviously put an objection on
23         the record, because whether it's
24         conflicting statements or not and being
25         able to rebut that statement with the
26         witness.
27    THE COURT:
28         I think it's Code of Evidence 613,
29         and I don't believe the foundation has
30         been laid.  Objection is noted for the
31         record.
32    BY MR. KNIGHT:

307

JAMES SINGLETARY

1   Q.     You told the officer that you, you don't
2 recall seeing tattoos, you were scared, you didn't
3 see that.
4   A.     Yes, sir, I told him. I told him this is
5 almost exact words I told him, "No, sir, I wasn't
6 looking at any tattoos. I was too scared."
7        I said I was more focused on the gun.
8   Q.     But you notice the braids on his head?
9   A.     That was before he got in the car. The reason
10 the braids come in is because I thought, I remember
11 as he was pointing the gun at me, little corn rows
12 sticking out the bottom like that, that's when I told
13 him braids. That's not even what I was talking
14 about. And I didn't say that on my video, and he
15 didn't ask me any questions like that.
16        But what I thought I remembered, like I said, I
17 mean, I just got robbed at gunpoint, because I
18 remember his face like it was yesterday. And I do
19 remember his face. Looking at him right now, I know
20 that's the guy that robbed me, without a shadow of a
21 doubt in my head. But I remember seeing, like, you
22 know little corn rows out of the bottom.
23   Q.     I guess the shadow of doubt I come to is my
24 client has tattoos, you don't see them, you are
25 looking at his eyes, how are you looking at his eyes
26 and not seeing his face; looking, seeing braids,
27 you've explained that a little bit, but not seeing
28 tattoos; he's talked to you and he's robbed you, but
29 you are not seeing his gold teeth. If he says give
30 me all your money, how are you missing these two big,
31 big details: Tattoos and gold teeth on his face?
32   A.     I was not looking at his mouth; I was not

308