# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HAROLD BUNCH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-5948** |
| **DARREL VANNOY** | **SECTION: "E"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Harold Bunch, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    He was charged with armed robbery, in violation of Louisiana Revised Statute 14:64, and armed robbery with the use of a firearm additional penalty, in violation of Louisiana Revised Statute 14:64.3[1]    On August 4, 2011, a

---

[1] State Rec., Vol. 1 of 6, R.p. 3, Amended Bill of Information.    He was charged with two other individuals, Wade Benjamin Inzinna and Tony Robertson.    On August 3, 2011, Robertson pleaded guilty to conspiracy to commit armed robbery and count two was nolle-prossed.    State Rec., Vol. 1 of 6, R.p. 35, Minute Entry, 8/3/11.    As part of the plea agreement, Robertson agreed to testify truthfully against Bunch.    *See* State Rec., Vol. 1 of 6,

jury found him guilty on both counts.[2]    On October 10, 2011, the trial court denied his

motions for new trial and post-verdict judgment of acquittal and sentenced him on count one

to 30 years imprisonment at hard labor, without benefit of parole, probation or suspension

of sentence.    On count two, the trial court imposed an additional sentence of five years

imprisonment at hard labor, without benefit of parole, probation or suspension of sentence.

His motion to reconsider the sentence was denied.    The State filed a multiple-offender bill

of information charging him as a second-felony offender.    On November 21, 2011, Bunch

stipulated to the multiple bill and waived a multiple-offender hearing.    The trial court

vacated his previous sentence and sentenced him as a second-felony offender to 35 years

imprisonment without benefit of parole, probation or suspension of sentence.[3]

On direct appeal, he asserted the trial court erred in denying the motion for new trial

and post-verdict judgment of acquittal and that the evidence was insufficient to support the

conviction.    On February 22, 2013, the court of appeal affirmed his conviction and

---

R.p. 113, Tr. at 4.    He was sentenced to five years imprisonment at hard labor without
benefit of probation, parole or suspension of sentence.    Inzinna also entered into a plea
agreement and received 10 years imprisonment for armed robbery and five years
imprisonment for armed robbery with a firearm as an additional penalty, to run
consecutively.    State Rec., Vol. 3 of 6, Trial Transcript (Wade Ben Inzinna), R.p. 654, Tr. at
265.

[2]  State Rec., Vol. 1 of 6, R.p. 95, Minute Entry, 8/4/11.

[3]  State Rec., Vol. 1 of 6, R.p. 90, Minute Entry 11/21/11.    The minute entry reflects
a sentence served at hard labor.    On direct appeal, the court noted that even though the
enhanced multiple-offender sentence could have been further enhanced by the firearm-
enhancement provision, the trial court did not do so, and the issue was not before the court.
*State v. Bunch*, 2012-KA-0431, 2013 WL 675542, at *1 n. 4 (La. App. 1 Cir. 2/22/13).

sentence.[4]    On October 11, 2013, the Louisiana Supreme Court denied his application for a writ of certiorari.[5]

On August 5, 2014, Bunch submitted his application for post-conviction relief to the state district court.    In that application, he raised seven grounds for relief identified by the trial court as follows:    (1) introduction of hearsay evidence and denial of the right of confrontation; (2) perjured testimony of Officer Kendall Bullen and the State's refusal to permit playing of the video of Bullen's interview of the victim which would prove that Bullen lied; (3) prosecutorial misconduct and perjury regarding the availability of equipment to play the video noted in claim #2; (4) perjured testimony of Detective Wendell O'Berry regarding the statements of Ben Inzinnia [sic] and the court's refusal to play the video; (5) suggestive lineup presented to the victim; (6) misidentification and ineffective assistance of counsel; and (7) ineffective assistance of counsel in not excusing a juror who stated she knew the victim and was a "family member."[6]    On December 2, 2014, the state district court denied relief.    On August 21, 2015, the Louisiana First Circuit denied his related supervisory writ application.[7]    On April 13, 2017, the Louisiana Supreme Court denied

---

[4]  *State v. Bunch*, 12-KA-0431, 2013 WL 675542 (La. App. 1 Cir. 2/22/13); State Rec., Vol. 1 of 6, R.p. 186.

[5]  *State v. Bunch*, 2013-KO-0632 (La. 10/11/13), 123 So.3d 1217; State Rec., Vol. 1 of 6, R.p. 193.

[6]  State Rec., Vol. 5 of 6, R.p. 822, State District Court Order Denying PCR (footnote omitted).

[7]  State Rec., Vol. 5 of 6, R.p. 859, *State v. Bunch*, 2015-KW-0808 (La. App. 1 Cir. Aug. 21, 2015).

relief.[8]

Bunch also challenged his habitual-offender sentence by motion to correct an illegal sentence filed on or about February 16, 2016.[9]    In that motion, he argued that the trial court failed to advise him of his right to remain silent before he pleaded guilty to the multiple bill, sentenced him to an additional five years for a charge not included in the multiple-offender bill and failed to sentence him to hard labor.    The state district court denied the motion. His related supervisory writ applications to the Louisiana First Circuit and the Louisiana Supreme Court were subsequently denied.[10]    The Louisiana Supreme Court found that his sentencing claim was not cognizable on collateral review, citing Louisiana Code of Criminal Procedure article 930.3; *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172; *State v. Cotton*, 09-2367 (La. 10/15/10), 45 So.3d 1030.

On June 18, 2017, Bunch filed his federal application for habeas corpus relief.[11]    He later filed an amended petition asserting claims raised in his motion to correct an illegal

---

[8]  State Rec., Vol. 1 of 6, R.p. 293; *State ex rel. Bunch v. State*, 2015-KH-1672 (La. 4/13/17), 215 So.3d 664.

[9]  State Rec., Vol. 1 of 6, R.pp. 255-58, Motion to Correct Illegal Sentence.

[10]  State Rec., Vol. 1 of 6, R.p. 288, *State v. Bunch*, 2016-KW-0594 (La. App. 1 Cir. Jun. 24, 2016); R.p. 296, *State ex rel. Bunch v. State*, 2016-KH-1337 (La. 4/13/17), 215 So.3d 668. In connection with his motion, he also filed a writ of mandamus with the Louisiana First Circuit because he believed that the district court had not ruled on his motion.    That writ was denied as moot because the motion had been denied.    State Rec., Vol. 6 of 6, R.p. 1051, *State v. Bunch*, 2016-KW-0467 (La. App. 1 Cir. May 31, 2016). .

[11]  Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

sentence.[12]    His applications raise the same arguments for relief presented in the state courts on collateral review.    The State concedes that the federal application is timely but argues the claims should be denied on the merits.[13]

### Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts adduced at trial as follows:

> On November 9, 2010, in Bogalusa, Tony Robertson and Wade Inzinna were driving around town when they began to talk about setting up "a lick," or a robbery. The two men discussed a plan to rob a man named James Singletary, who was an acquaintance of both men. Prior to the robbery, Inzinna picked up a third man to assist them.
>
> Inzinna drove Robertson and the third man to the rear of a laundromat on Avenue F. Robertson and the third man waited there until Inzinna returned shortly thereafter with Singletary in his car. At some point, the third man drew a weapon, pointed it at Singletary, and demanded that he "empty his pockets." Singletary threw all of his cash on the back seat and exited the vehicle. The third man instructed Robertson to pat down Singletary. Robertson complied. Thereafter, Singletary ran away. Inzinna, Robertson, and the third man all fled in Inzinna's vehicle, but Inzinna and Robertson were arrested together shortly thereafter. During questioning by detectives, both Inzinna and Robertson identified defendant as the third man participating in the robbery.[14]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective

---

[12]  Rec. Doc. 7.

[13]  Rec. Doc. 16.    The State's response understandably does not address the claims raised in Bunch's motion to correct an illegal sentence because Bunch's amended petition was filed after the response order, with a copy of only the original petition, had issued.

[14]  *State v. Bunch*, 2012-KA-0431, 2013 WL 675542, at *1 (La. App. 1 Cir. 2/22/13).

Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v.*

*Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

**Analysis**

A.  *Ineffective Assistance of Counsel (Claims 1, 6, 7)*

Bunch raises three ineffective-assistance-of-counsel claims:    (1) trial counsel was ineffective because he failed to object to Lieutenant Wendell O'Berry's testimony concerning Inzinna's wife's out of court statement, which he asserts constituted inadmissible hearsay and a violation of his confrontation rights; (2) trial counsel failed to advance a defense and highlight for the jury the fact that he possessed distinctive features, which the victim denied seeing during the robbery, by calling witnesses to testify about his distinguishing features and the length of time he had them; and (3) counsel should have challenged a prospective juror who admitted she knew the victim.    On collateral review, the state courts rejected his ineffective-assistance claims on the merits.    The state district court issued a lengthy written decision denying relief.    The appellate court denied relief without stated reasons. The Louisiana Supreme Court stated simply that he failed to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically. a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).

If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective-assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the

record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."    *Crockett*, 796 F.2d at 793.

Because the state courts rejected his ineffective-assistance claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).    In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective-assistance-of-counsel claims must be "doubly deferential" in order to afford both the state court and the defense attorney the benefit of the doubt.    *Burt v. Titlow*, 134 S.Ct. 10, 13 (2013) (citing *Cullen v. Pinholster*, 563 U.S. at 190).    For the following reasons, the state court's determination is neither contrary to, nor an unreasonable application of, clearly established federal law.

### 1.    Hearsay and Confrontation Violation

Bunch alleges that "Ben's wife's out of court statement got Mr. Bunch a warrant for his arrest because she told police officer that Mr. Bunch go by the street name 'Mutha' and also, 'Hot Boy.'    Ben Inzinnia's wife did not testify at Mr. Bunch's trial nor was there a written statement in open court, yet, the D.A. still used her statement at Mr. Bunch's trial and on Mr. Bunch's appellate brief."[15]    The testimony to which Bunch objects occurred during the following exchange, as Detective O'Berry explained the course of their investigation and

---

[15]  Rec. Doc. 3-1, p. 42.

how it led to Bunch as a perpetrator:

A.    We asked him could we look at his phone, because he was telling us about when –

Q.    You talking about Inzinna?

A.    Yes. He told us about when he had called Hot Boy and when Hot Boy had called him—or Globe, he kept referring to him as Globe. And then he said he was listed as Hot Boy in his phone. We asked him where his phone was and he said his wife had it and she was at work at Sally's Beauty Supply, which is near the police department.

We asked him would he mind if we got his phone and looked in his phone to see the call log, it's on tape; and he said I don't mind, you can look at it. He said I would rather you have my wife bring it to you because I don't want her to lose her job if you-all go up in there questioning her, so we said okay.

When we got through interviewing him, we went to Sally and asked her to, you know, meet us outside, and she brought the phone out. And we questioned her briefly about the identity of this person Hot Boy. And she said Hot Boy also goes by the name Muther.

Q.    Muther?

A.    Like Luther, but with an "M."

Q.    Were you familiar with that nickname?

A.    I heard of it, but I couldn't remember right off hand who it was.

Q.    Okay. Now, did you talk with Mr. Inzinna about that nickname?

A.    Yes. We went back to the jail. By this time, all the interviews were over with and he had been brought back to the jail. We went in and asked him who Muther was, did he know that name, did Hot Boy go by that and he said yes he did.[16]

Lieutenant O'Berry was able to link the nickname "Muther" to Harold Bunch.    He then

---

[16]    State Rec., Vol. 3 of 6, Trial Transcript at R.pp. 540-541, Tr. at 151-52.

obtained a recent photograph of Bunch to use for identification purposes.    Both Robertson and Inzinna identified Bunch as the third perpetrator.[17]

The State correctly contends the lieutenant's statement does not constitute hearsay under Louisiana law.    "Under the Louisiana Rules of Evidence, an investigating officer may be permitted to refer to statements made to him by other persons involved in the case without it constituting hearsay if it explains his own actions during the course of an investigation and the steps leading to the defendant's arrest."    *Woodfox v. Cain*, 609 F.3d 774, 814 (5th Cir. 2010).    The hearsay exception has limits and generally will not include an explanation that involves a direct assertion of criminal activity by the accused.    *Id*. The statement at issue falls within this non-hearsay category because the officer was merely explaining the steps he took during the investigation that led to Bunch's arrest.    The statement was not offered for the truth of the matter asserted.    Thus, an objection based on hearsay would have been futile.    Counsel is not ineffective for failing to assert a meritless objection.    *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

Furthermore, the decision by trial counsel to forgo a particular objection is generally afforded considerable discretion because it constitutes a matter of trial strategy.    This type of unsupported assertion is normally insufficient to support an ineffective-assistance claim. *See*, *e.g.*, *Wolfe v. Cain*, Civ. Action No. 11–2906, 2012 WL 6839718, at *9 (E.D. La. May 14,

---

[17]   *Id*. at R.pp. 542-44; Tr. at 153-55.

2012), *adopted*, 2013 WL 139871 (E.D. La. Jan. 10, 2013); *Rios–Delgado v. United States*, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance.    In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.").

Nor has Bunch shown there is a reasonable probability that, but for counsel's failure to object to the testimony, the result of the proceeding would have been different.    The testimony regarding a third nickname associated with Bunch was of little, if any, importance. Even if the testimony was objectionable, it is unlikely that the introduction of that testimony at trial played any role in Bunch's conviction.    Accordingly, he is not entitled to habeas relief on this claim.

### 2.    Defense Strategy and Witnesses

In his next claim, Bunch essentially disputes the veracity of the victim's identification, and argues that defense counsel did not pursue a crucial defense strategy by calling witnesses to testify regarding Bunch's unique and distinctive characteristics (*i.e.*, facial tattoos, gold teeth), which the victim admittedly failed to notice during the robbery or mention to police.    He also argues that the failure to show the jury the videotaped statement the victim made to police deprived him of a valid defense of innocence.

The record reveals that defense counsel attempted to show the video during the victim's testimony to refresh his memory; however, the trial court sustained the State's

objection to the evidence.[18]    The victim had testified candidly that he recalled the police asking him about the perpetrator's features such as gold teeth or tattoos, but he told them "I don't remember seeing anything like that" and "I was too scared of the gun."[19]    The trial court agreed that based on the witness's testimony there were no legal grounds to support introduction of the video.    Here, given that counsel indeed tried to introduce the victim's videotaped statement, but was simply unsuccessful, he did not perform deficiently in this regard.

Furthermore, counsel pointedly challenged the victim's credibility and his identification to the best of his ability during trial.    The transcript reveals defense counsel highlighted for the jury the fact that the victim's recollection following the robbery oddly did not include the unique and distinctive tattoos possessed by Bunch.    The issue was raised from the outset by the defense in opening statement[20] and throughout trial.    At one point, defense counsel posed the following question to the victim:

> I guess the shadow of doubt I come to is my client has tattoos, you don't see them, you are looking at his eyes, how are you looking at his eyes and not seeing his face; looking, seeing braids, you've explained that a little bit, but not seeing tattoos; he's talked to you and he's robbed you, but you are not seeing his gold teeth.    If he says give me all your money, how are you missing these two big, big details: Tattoos and gold teeth on his face?[21]

---

[18]    State Rec., Vol. 3 of 6, Trial Transcript, R.p. 618, Tr. at 229.

[19]    State Rec., Vol. 3 of 6, Trial Transcript, R.pp. 617-18, Tr. at 228-230.

[20]    State Rec., Vol. 3 of 6, Trial Transcript, R.pp. 524-26, Tr. at 135-138.

[21]    State Rec., Vol. 3 of 6, Trial Transcript, R.p. 619, Tr. at 230.

The victim explained simply that he was more focused on the gun.    The record shows that counsel sufficiently focused the jury's attention on Bunch's unique characteristics.    Trial counsel strategically determined it was unnecessary to call acquaintances of Bunch's as defense witnesses to attest to his unique and highly visible characteristics, which no one denied he possessed, when doing so would not have benefitted the defense.    *Woodfox v. Cain*, 609 F.3d at 808.    Bunch is not entitled to relief on this claim.

### 3.  Juror Challenge

Bunch's final ineffective-assistance claim is that counsel failed to challenge a juror who admitted to knowing the victim.    He contends the juror ultimately served on the jury even though biased in favor of the State.    Bunch raised this contention in his pro se motion for new trial.    Counsel filed an independent motion for new trial on Bunch's behalf, but also adopted Bunch's motion and argued his points of contention at the sentencing hearing.[22]    In denying the motions, the trial court reasoned:

> I don't have the specific name. I have the defendant's representation that there was a juror that indicated that she knew the victim and ended up serving on the jury. Again, without having any specific recollections, I know that it is my practice when they acknowledge knowing any of the participants in the trial that I will follow up with them to ensure that they can still serve fairly and impartially irrespective of that knowledge.
>
> I do not believe that there was anything said during that process that suggested that this juror could not be fair and impartial; therefore, I'm going to deny the motion for new trial on that basis.[23]

---

[22]  State Rec., Vol. 4 of 6, Sentencing Transcript (October 10, 2011), R.p. 738, Tr. at 349-354.

[23]  State Rec., Vol. 4 of 6, Sentencing Transcript at pp. 353-354.

Bunch asserted the claim on collateral review.    The state courts denied relief on the merits.

Although Bunch does not name the juror at issue, the voir dire transcript reflects that Adair Miller admitted she knew the victim.[24]    Many other prospective jurors admitted they were acquainted with other trial participants including officers involved in the investigation. Defense counsel acknowledged that merely knowing someone is not a problem unless that prospective juror would "hold that person either to a higher standard or not believe or believe everything they say."    He asked the panel "are you-all going to be able to waive that to determine whether they are telling the truth, lying, mistaken, or anything else. Does anyone have a problem with that, especially the people who have indicated they know them?"[25]    Not a single juror raised their hand.    Shortly thereafter, defense counsel explored with Ms. Miller alone whether she would be able to weigh eyewitness testimony fairly with no supporting documents.    The following exchange occurred:

MR. KNIGHT:

Does anyone else have a problem? The last main area I want to talk a little bit about is your knowledge of eye witness testimony, to be able to again talk about weighing the evidence. If you are presented with only testimony from an individual with no supporting documents, are you going to be able to accurately, again, weigh the testimony of that individual, determine whether in your mind they are telling the truth or lying? Is that going to be a problem for anyone?

Ms. Miller, have I picked on you yet? I'm sorry, I picked on you already.

---

[24]  State Rec., Vol. 2 of 6, Voir Dire, R.p. 458, Tr. at 71.

[25]  State Rec., Vol. 2 of 6, Tr. at 72.

MS. MILLER:

It wouldn't be a problem.

MR. KNIGHT:

Ms. Miller, do you have any idea how would you determine in your mind whether someone is lying or not?

MS. MILLER:

I'd have to hear all the facts.

MR. KNIGHT:

So, as a reasonable person, one would not just gut feeling say, oh, they are lying?

MS. MILLER:

No.

MR. KNIGHT:

You'd weigh the testimony.

MS. MILLER:

Yes.

MR. KNIGHT:

See if there's anything maybe conflicting of statements that don't match.

MS. MILLER:

That's it.

MR. KNIGHT:

Factors associated with what they are saying, where they were, those kinds of things?

MS. MILLER:

You'd have to weigh it all out first and hear all the evidence.[26]

---

[26]  State Rec., Vol. 2 of 6, Tr. at 74-75.

Both the prosecution and the defense found her acceptable, and Ms. Miller ultimately served on the jury.

Juror bias is a question of fact for the trial court, which is owed deference by this Court under the AEDPA.  *See Virgil v. Dretke*, 446 F.3d 598, 610 n. 52 (5th Cir. 2006).    On this record, Bunch has failed to establish any actual or presumed bias based on the mere fact that Ms. Miller knew the victim.    *Montoya v. Scott*, 65 F.3d 405, 419-420 (5th Cir. 1995) (allegation that juror was acquainted with victim does not alone establish bias sufficient to disqualify juror).    Despite her acquaintance with the victim, a fact that was not explored in more factual detail, Ms. Miller acknowledged she would still be able to fairly assess and weigh the evidence in the case.    Without some valid basis for an objection, counsel did not perform deficiently in allowing her to remain on the jury.

Furthermore, an attorney's decision whether to request removal of a juror is generally a matter of trial strategy.    *See Ray v. Johnson*, 196 F.3d 1257 (5th Cir. 1999); *Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Wash v. Hood*, No. 07CV46, 2007 WL 3047149, at *5 (N.D. Miss. Oct. 17, 2007).    Counsel's decision in this regard is entitled to a strong presumption of reasonableness.    *Strickland*, 466 U.S. at 689.    Here, defense counsel ensured that Ms. Miller and other jurors familiar with the trial participants would nonetheless fairly weigh the witness testimony.    Given that there was nothing to indicate that Ms. Miller was biased simply because she knew the victim, counsel properly determined there was no basis to request her removal.    Bunch is not entitled to relief on this claim.

Accordingly, the state court's decision rejecting his claims of ineffective assistance of

trial counsel was neither contrary to nor an unreasonable application of *Strickland*.

   B. *Prosecutorial Misconduct (Claims 2, 3, 4)*

   Bunch claims that he was denied a fair trial based on three instances of alleged prosecutorial misconduct.   Bunch points to two separate instances where the prosecutor allegedly allowed witnesses, Captain Kendall Bullen and Lieutenant Wendell O'Berry, to offer false testimony.    He points to one instance where the prosecutor "deliberately and knowingly made the false statement of material fact" that the courtroom was not equipped to watch a videotape offered by the defense.[27]    These claims were raised and rejected on the merits by the state courts on collateral review.

   Due process is violated when the State knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.    *Giglio v. United States*, 405 U.S. 150, 766 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).    To obtain relief, a petitioner must show that (1) the testimony was actually false; (2) the State knew it was false; and (3) the testimony was material.    *Duncan v. Cockrell*, 70 F. Appx. 741, 744 (5th Cir. 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993).    False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict.    *Duncan*, 70 F. Appx. at 744 (citing *Nobles*, 127 F.3d at 415).

   A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact.    *Brazley v. Cain*, 35 F. Appx. 390, 2002 WL 760471, at *4 n.

---

[27]   Rec. Doc. 3-1, p. 45.

4 (5th Cir. Apr. 16, 2002) (citing *United States v. Emuegbunam*, 268 F.3d 377, 403-04 (6th Cir.

2001); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *United States v. Noriega*, 117 F.3d

1206, 1218 (11th Cir. 1997), *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989));

*Thompson v. Cain*, 161 F.3d 802, 808 (5th Cir. 1998).    On federal habeas review, this Court

must determine whether the state court's rulings were contrary to or an unreasonable

application of federal law, as determined by the United States Supreme Court.

  In the first instance, Bunch claims Captain Bullen falsely denied at trial that he asked

the victim whether the perpetrator had gold teeth or tattoos.    Bullen testified that both he

and Lt. O'Berry interviewed the victim and asked him questions.    The following exchange

occurred during cross-examination of Captain Bullen:

  Q. Did you ask any specific criteria, gold teeth or tattoos?

  A. I did not.

  Q. Did Mr. O'Berry?

  A. He may have. I don't know.

  Q. You don't recall, all right.[28]

Bunch maintains that the videotape of the victim's statement showed that Bullen actually

posed those questions to the victim, but the State failed to correct his false testimony.    The

videotape was not introduced at trial.    Nor was the evidence made a part of the record on

collateral review.    Consequently, there is no evidence from which the Court may conclude

that the testimony in question was actually false.    Regardless, even if it was Captain Bullen

---

  [28]  State Rec., Vol. 3 of 6, Trial Transcript, R.p. 577, Tr. at 188.

who asked the question of the victim, rather than O'Berry, the false statement made by Bullen is completely immaterial and had no impact whatsoever on the jury's verdict.    Regardless of which officer asked the questions, the jury knew from the victim's testimony, in particular, that one of the officers asked him about the perpetrator's teeth and tattoos during the interview, and that he stated he did not recall seeing either gold teeth or tattoos.[29]    Bunch failed to prove the statements at issue, even if false, were material.

The next instance of prosecutorial misconduct allegedly occurred during Lt. O'Berry's testimony when he related the words, as per Ben Inzinna, that were tattooed on Bunch's eyelids.    He testified about the description of the third perpetrator supplied by Ben Inzinna as follows:

> He described him, he said, I believe he said he had teardrop tattoos. He said he had tattoos across both of his eyes and said, I believe, he said he thinks it said "What's Next."[30]

Lt. O'Berry was then asked to look at Bunch's eyes, and he observed what looked like the words 'What's Next' on his eyelids.[31]    Bunch maintains that the videotaped statement by Inzinna, which was not made a part of the record, shows that Ben actually said Bunch had "Who Next" tattooed on his eyelids, not "What's Next."    Again, his allegation is conclusory and there is no evidence that shows the testimony in question was actually false.    Bunch alleges that the trial court did not allow the video to be played for the jury to prove that the

---

[29]  State Rec., Vol. 3 of 6, Trial Transcript, R.p. 615-18, Tr. at 226-229.

[30]  State Rec., Vol. 3 of 6, Trial Transcript, R.p. 538, Tr. at 149.

[31]  *Id.* at 150.

testimony was false, but the record shows that no such request was made by defense counsel. Obviously counsel was aware that any minor inconsistencies in relating the identifying marks was insignificant and had no bearing on the outcome of trial.    The jury knew from the testimony in this case that Bunch had distinctive identifying marks and that the victim did not recall seeing those marks on the perpetrator during the robbery.    Thus, Bunch failed to prove the statements at issue, even if false, were material.    On the record presented, the state court reasonably concluded that Bunch failed to show that the prosecution presented false testimony or that the State suborned perjury through these officers' testimony.

Finally, Bunch claims that the prosecutor deliberately and knowingly made a false statement when he told the jury that the courtroom was not equipped to play video offered by the defense.    He alleges this false statement of material fact denied him a fair trial.    The statements at issue occurred during cross-examination of the victim when defense counsel attempted to introduce the victim's videotaped statement.    The following exchange took place:

> MR. KNIGHT:
>
>    I'd like to play the video on the portions that I'm talking about to refresh the witness' mind.
>
> THE COURT:
>
>    Any objection?
>
> MR. MURRAY:
>
>    Um.
>
> MR. KNIGHT:

It should take about a minute if we can go to the exact point in the video.

MR. MURRAY:

*Other than I have nothing to play it with.*

MR. KNIGHT:

I'm getting close to being done here, Judge, but I'd like [sic] finish now.

THE COURT:

Well, I mean, we don't have anything to play it on.

MR. MURRAY:

*I understand there's a DVD player in the other room right there.*

THE WITNESS:

The question is do I remember the cop asking me does he have gold teeth or do I remember seeing any gold teeth?     Because I do remember the cop asking me.

BY MR. KNIGHT:

I'm asking about your statements made at the time to the officers to determine what you said then.

MR. MURRAY:

I'm not actually certain that there's been any – the witness has answered in such a fashion that it does not allow, I don't think, under the evidence codes to play or read any prior statement at this point.

THE COURT:

That an objection?

MR. MURRAY:

That's an objection.

THE COURT:

Sustained.

MR. KNIGHT:

Judge, obviously put an objection on the record, because whether it's

conflicting statements or not and being able to rebut that statement with the witness.

THE COURT:

I think it's Code of Evidence 613, and I don't believe the foundation has been laid. Objection is noted for the record.

The statements made by the prosecutor were not false and did not deny Bunch a fair trial. Indeed, the prosecutor, Mr. Murray, clarified his own statement by noting there was a DVD player in the next room.    There was nothing false or misleading about his statement.

Accordingly, the state court's denial of relief on the prosecutorial-misconduct claims was not contrary to or an unreasonable application of federal law.    Bunch is not entitled to relief on these claims.

C.  *Suggestive Identification (Claim 5)*

Bunch claims the pretrial identification in the form of a photo array was unduly suggestive because his head was noticeably smaller than any of the others.[32]    He asserts that the line up shows "6 photos Mr. Bunch #5 everybody head on it was big like a basket ball Mr. Bunch head was like a seed."[33]    His motion to suppress the identification was denied by the trial court.    The state courts denied the claim on the merits on collateral review.

To prevail on his claim that the victim's identification testimony derived from a

---

[32]    According to Bunch, the photo used was taken when he was younger and had no tattoos.    Rec. Doc. 3-1, p. 50.

[33]    Rec. Doc. 3-1, p. 49.

suggestive identification procedure, a petitioner must show that the identification procedure was "so unnecessarily suggestive and conductive to irreparable mistaken identification that he was denied due process of law." *Neil v. Biggers*, 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).    While initially it must be determined if the pretrial identification is impermissibly suggestive, even if a pretrial identification procedure is suggestive, a reviewing court will look to the totality of the circumstances in order to determine if the identification is nevertheless reliable.    *Biggers*, 409 U.S. at 199-20.    In making that determination, the Court considers the following five factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

*Brathwaite*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199–200.    This analysis involves a mixed question of law and fact.    *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997).    This Court must therefore determine whether the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established federal law.    28 U.S.C. §2254(d)(1); *Coleman v. Quarterman*, 456 F.3d 537, 544 (5th Cir. 2006); *Walker v. Vannoy*, Civ. Action No. 15-6809, 2016 WL 7485675, at *11 (E.D. La. Sept. 9, 2016), *adopted*, 2016 WL 7476334 (E.D. La. Dec. 29, 2016).    For the following reasons, Bunch has not made the required showing.

  Bunch complains that because the photographs used were not similar enough the

lineup essentially drew attention to Bunch's photograph.    Based on the evidence presented at the motion to suppress hearing, the trial court found the victim's identification was not impermissibly suggestive, stating:

> Okay. All right, having reviewed the lineup identification form that was utilized in this case, it appears that the – of the six photographs, there is sufficient similarity between those photographs so as not to be suggestive as to who the defendant was.[34]

Captain Bullen testified at the hearing that he had one of his detectives set up a photographic lineup.    That lineup was introduced as evidence at the hearing.    Bullen explained that the series of photos included in the lineup is generated from a computer program.    The program allows the detective to enter criteria based on the suspect and the computer generates a random series of photographs of individuals with similar characteristics such as complexion, gender, age, weight range and hair style, in order to get the closest resembling pictures available.    On cross-examination, defense counsel questioned Bullen about the six photographs and the various characteristics of the individuals shown.    He discussed the weight of the individuals and how that was factored into the criteria.    He also explored the fact that four of the six individuals had facial hair, which Bullen admitted was not factored into the criteria.    He questioned whether teeth were a criteria, but Bullen noted that they were not, and that none of the individuals in the photo array were smiling or showing their teeth.    Notably, counsel did not point out head size or direct any question to Captain Bullen about that feature during his examination.

---

[34] State Rec., Vol. 2 of 6, Suppression Hearing, R.p. 508, Tr. at 121.

As the United States Fifth Circuit Court of Appeals explained in rejecting a similar claim where only the petitioner was shown tattooed in a photo array:

> Lee's argument that the fact that the police lineup from which numerous witnesses selected Lee contained no other photographs of a man with a tattoo on his face makes it impermissibly suggestive is similarly unavailing. The government is not required to fill a lineup with other photos of men of roughly Lee's age, hair, and skin tone, all of whom have tattoos on their faces. As we have noted, "[p]olice stations are not theatrical casting offices; a reasonable effort to harmonize the lineup is normally all that is required." *Swicegood v. Alabama*, 577 F.2d 1322, 1327 (5th Cir. 1978) (quoting *United States v. Lewis*, 547 F.2d 1030, 1035 (8th Cir. 1976)). Disparity in physical appearance among the lineup photos is not enough to render an identification suggestive. *Id.*

*United States v. Lang*, No. 06-30124, 2007 WL 1725548, at *10 (5th Cir. June 14, 2007). Based on the evidence, it is clear that the photographs depicted men who appeared reasonably similar to Bunch in fundamental characteristics.    Even if it were shown that Bunch's head appeared smaller than other individuals in the photo array, that difference alone is not enough to render the identification impermissibly suggestive.

Accordingly, the state court's determination rejecting Bunch's claim that the trial court should have suppressed the suggestive identification was not unreasonable.    Given the deferential standards mandated by the AEDPA, Bunch's claim concerning the identification should be denied.

D.    *Amended Petition - Illegal Sentence Claims*

Bunch filed an amended petition raising additional claims relating to his habitual-offender sentence.    These claims include: (1) the failure to advise him of his right to remain silent deprived him of due process during multiple-offender guilty-plea proceedings; (2) failure by the State to file a valid multiple bill of information alleging a violation of Louisiana

Revised Statute 14:64.3, to support an additional five-year sentence penalty; and (3) failure to impose a term of hard labor.    The Louisiana Supreme Court rejected the sentencing claims as not cognizable on collateral review.

Bunch is placed on notice by this report and recommendation that the Court is raising procedural default, and he will have an opportunity to specifically object to the procedural-default ruling.    This Court has discretion to raise procedural default *sua sponte*, provided that the petitioner has notice that the issue is being considered.    *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998).    It is evident that the State's failure to raise the defense was merely inadvertent, given the procedural history discussed at the outset.    The Louisiana Supreme Court on post-conviction review relied upon state procedural rules as the basis for denying relief on his sentencing claims, citing Louisiana Code of Criminal Procedure article 930.3, *State ex rel. Melinie v. State* and *State v. Cotton*.    The State has not in any manner made an express waiver of the procedural default defense in this case.    For these reasons, the Court finds that it is appropriate to consider the procedural default of the claims as imposed by the Louisiana Supreme Court.

**Accordingly, Bunch is hereby specifically advised and instructed that this report and recommendation is notice to him that this Court is *sua sponte* raising the issue of procedural default and that Petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.**    *Magouirk*, 144 F.3d at 350, 360.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state-law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731–32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal-court review of a federal claim raised in a habeas petition when, as here, the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The procedural rule applied by the Louisiana courts here satisfies both requirements. The federal courts have repeatedly held that Louisiana Code of Criminal Procedure article 930.3 and related state case law, such as *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996), and *State v. Cotton*, 45 So.3d 1030 (La. 2010), are both independent and adequate state-law grounds for dismissal which bar review of similar claims in a federal habeas corpus proceeding.[35]

---

[35] *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Table, Text in Westlaw); *Zantiz v. Louisiana*, No. 12–2908, 2014 WL 775577, at *7 (E.D. La. Feb. 25, 2014) (order adopting report); *Johnson v. Cain*, No. 12–0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012); *Evans v. Cain*, No. 112584, 2012 WL 2565008, at *6–*7 (E.D. La.

A federal habeas petitioner may be afforded federal review of a procedurally defaulted claim only if he demonstrates "cause" for his default and "prejudice attributed thereto," or that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover v. Cain*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos v. Scott*, 61 F.3d at 338–39 (citing *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) and *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). Bunch has demonstrated neither.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992). The Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claim in a procedurally proper manner or that any action or inaction on the part of the State prevented him from doing so.[36] "Absent a showing of cause, it is not necessary for the court to

---

Mar. 14, 2012), *adopted*, 2012 WL 2565001, at *1 (E.D. La. Jul. 2, 2012); *Taylor v. Cain*, No. 07–3929, 2008 WL 4186883, at * 16 (E.D. La. Sep. 10, 2008) (order adopting report); *Williams v. Cain*, No. 05–0710, 2008 WL 3363562, at *8 (E.D. La. Aug. 8, 2008) (order adopting report).

[36] Even if Bunch argued appellate counsel was ineffective in failing to raise the claim on direct appeal, ineffective assistance of counsel cannot serve as cause for the default because that claim has never been presented to the state courts. A claim that appellate

consider whether there is actual prejudice." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Because Bunch has not satisfied the "cause and prejudice" test, this Court must determine whether the application of the procedural bar would result in a fundamental miscarriage of justice. A petitioner makes such a showing only if he establishes as a factual matter that he is "actually innocent" of the crime of conviction. *Williams v. Thaler*, 602 F.3d 291, 307 (5th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)); *McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir.), *cert. denied*, 133 S.Ct. 647, 648, 184 L.Ed.2d 482 (2012) (citing *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) and *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)). When the petitioner has not adequately asserted his actual innocence, the procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Bunch has not made any credible showing that he is actually innocent of the underlying conviction. He has not demonstrated that any miscarriage of justice will result from this Court's failure to consider his defaulted claims. Accordingly, the sentencing

---

counsel provided ineffective assistance may, in some circumstances, serve as "cause" to overcome a procedural bar. *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986). But the ineffective-assistance-of-counsel claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim. And we held in [*Murray v. Carrier*, 477 U.S. at 488-89] that the principles of comity and federalism that underlie our longstanding exhaustion doctrine—then as now codified in the federal habeas statute, *see* 28 U.S.C. §§ 2254(b), (c)— require *that* constitutional claim, like others, to be first raised in state court") (emphasis in original).

claims are procedurally barred in this federal court.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Bunch's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[37]

New Orleans, Louisiana, this  9th  day of    January    , 2018.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[37] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.