**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HAROLD J. BUNCH,** | **CIVIL ACTION** |
| **Petitioner** | |
| | |
| **VERSUS** | **NO. 17-5948** |
| | |
| **DARREL VANNOY,** | **SECTION: "E" (5)** |
| **Respondent** | |

## ORDER AND REASONS

Before the Court is a Report and Recommendation issued by Magistrate Judge Michael North recommending that Petitioner Harold Bunch's petition for federal habeas corpus relief be dismissed with prejudice.[1] Petitioner timely objected to the magistrate judge's Report and Recommendation.[2] For the reasons that follow, the court **ADOPTS** the Report and Recommendation as its own, and hereby **DENIES** Petitioner's application for relief.

## BACKGROUND

Petitioner is an inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Petitioner seeks relief from his state court convictions for armed robbery and armed robbery with the use of a firearm.[3] The facts underlying Petitioner's conviction are as follows. On November 9, 2010, Petitioner and two other men, Tony Robertson and Wade Inzinna, robbed the victim, James Singletary.[4] During the robbery, Petitioner drew a gun, pointed it at Singletary's head, and demanded Singletary "empty his pockets."[5] Singletary complied with Petitioner's demand before fleeing on foot.[6] Shortly thereafter,

---

[1] R. Doc. 19.
[2] R. Doc. 20.
[3] R. Doc. 3.
[4] *Id.*
[5] *State v. Bunch*, No. 2012-KA-0431, 2013 WL 675542, at *1 (La. App. 1 Cir. 2/22/13).
[6] *Id.*

Robertson and Inzinna were arrested and identified Petitioner as their accomplice while being questioned by detectives.[7] Petitioner was charged with armed robbery and armed robbery with the use of a firearm.[8]

On August 4, 2011, a jury found Petitioner guilty of the charges against him,[9] and the trial court sentenced Petitioner, a second-felony offender, to thirty-five years at hard labor.[10] The court of appeal affirmed Petitioner's conviction and sentence on February 22, 2013.[11] The Louisiana Supreme Court denied Petitioner's writ application on October 11, 2013.[12] On August 5, 2014, Bunch submitted his application for post-conviction relief to the state district court. On December 2, 2014, the state district court denied relief. On August 21, 2015, the Louisiana First Circuit denied his related supervisory writ application.[13] On April 13, 2017, the Louisiana Supreme Court denied relief.[14]

On June 18, 2017, Petitioner filed the instant petition seeking a writ of habeas corpus.[15] In his petition, Petitioner raises seven grounds for relief:

(1) introduction of hearsay evidence and denial of the right of confrontation;
(2) perjured testimony of Officer Kendall Bullen and the State's refusal to permit playing of the video of Bullen's interview of the victim which would prove that Bullen lied;

---

[7] *Id.*
[8] State Rec., Vol. 1 of 6, R.p. 3, Amended Bill of Information. Petitioner was charged along with Inzinna and Robertson. On August 3, 2011, Robertson pleaded guilty to conspiracy to commit armed robbery and count two was nolle-prossed. State Rec., Vol. 1 of 6, R.p. 35, Minute Entry, 8/3/11. As part of the plea agreement, Robertson agreed to testify truthfully against Petitioner. *See* State Rec., Vol. 1 of 6, R.p. 113, Tr. at 4. Robertson was sentenced to five years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Inzinna also entered into a plea agreement and received ten years imprisonment for armed robbery and five years imprisonment for armed robbery with a firearm as an additional penalty, to run consecutively. State Rec., Vol. 3 of 6, Trial Transcript (Wade Ben Inzinna), R.p. 654, Tr. at 265.
[9] State Rec., Vol. 1 of 6, R.p. 95, Minute Entry, 8/4/11.
[10] State Rec., Vol. 1 of 6, R.p. 90, Minute Entry 11/21/11.
[11] *State v. Bunch*, No. 12-KA-0431, 2013 WL 675542 (La. App. 1 Cir. 2/22/13); State Rec., Vol. 1 of 6, R.p. 186.
[12] *State v. Bunch*, 2013-KO-0632 (La. 10/11/13), 123 So. 3d 1217.
[13] State Rec., Vol. 5 of 6, R.p. 859, *State v. Bunch*, 2015-KW-0808 (La. App. 1 Cir. Aug. 21, 2015).
[14] State Rec., Vol. 1 of 6, R.p. 293; *State ex rel. Bunch v. State*, 2015-KH-1672 (La. 4/13/17), 215 So. 3d 664.
[15] R. Doc. 3. Petitioner filed an amended petition asserting claims raised in his motion to correct an illegal sentence. R. Doc. 7. In his report, Magistrate Judge North recommended the Court find this claim has been procedurally defaulted. R. Doc. 19 at 28.

(3) prosecutorial misconduct and perjury regarding the availability of equipment to play the video noted in claim #2;

(4) perjured testimony of Detective Wendell O'Berry regarding the statements of Ben Inzinna and the court's refusal to play the video;

(5) suggestive lineup presented to the victim;

(6) misidentification and ineffective assistance of counsel; and

(7) ineffective assistance of counsel in not excusing a juror who stated she knew the victim and was a "family member."[16]

Petitioner's application was referred to the magistrate judge who issued his Report and Recommendation on January 9, 2018.[17] In his Report and Recommendation, Magistrate Judge North concluded Petitioner is not entitled to federal habeas corpus relief and recommended his petition be dismissed.[18]

Petitioner filed a timely notice of objection on January 29, 2018.[19] Petitioner objects to the magistrate judge's recommended disposition of five claims. Petitioner argues (1) Detective Wendell O'Berry's explanation of how he came to identify Petitioner as the suspect constitutes inadmissible hearsay in violation of Petitioner's constitutional right to confront the witnesses against him; (2) Petitioner's trial counsel's failure to call witnesses who would have testified regarding Petitioner's "unique and distinctive characteristics" constitutes ineffective assistance; (3) Petitioner's trial counsel was ineffective for failing to move to strike a juror who admitted during voir dire that she knew the victim; (4) the photo array used to identify Petitioner was unconstitutionally suggestive; and (5) Petitioner was "not advised of his right to remain silent" "before pleading guilty as a habitual offender."[20]

---

[16] R. Doc. 3.
[17] R. Doc. 19.
[18] *Id.*
[19] R. Doc. 20.
[20] *Id.*

## ANALYSIS

A.  Standard of Review

In reviewing the magistrate judge's Report and Recommendations, the Court must conduct a *de novo* review of any of the magistrate judge's conclusions to which a party has specifically objected.[21] As to the portions of the report that are not objected to, the Court needs only review those portions to determine whether they are clearly erroneous or contrary to law.[22]

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court must defer to the decision of the state court on the merits of a pure question of law or a mixed question of law and fact unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[23] A state court's decision is contrary to clearly established federal law if: "(1) the state court applies a rule that contradicts the governing law announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts."[24] Further, AEDPA requires that a federal court give state trial courts substantial deference.[25]

B.  Officer Berry's testimony does not constitute inadmissible hearsay

At trial, Detective O'Berry explained how he came to identify Petitioner as one of the men who robbed Singletary. He explained that, during a custodial interview, Inzinna

---

[21] *See* 28 U.S.C. § 636(b)(1) ("[A] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[22] *Id.*
[23] 28 U.S.C. § 2254(d)(1).
[24] *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)).
[25] *Brumfield v. Cain*, 135 S. Ct. 2269 (2015).

explained he did not know the real name of the third man with whom he committed the

robbery, but that he had him listed in his phone as "Hot Boy." Detective O'Berry explained:

> We asked [Inzinna] where his phone was and he said his wife had it and she was at work at Sally's Beauty Supply, which is near the police department. We asked him would he mind if we got his phone and looked in his phone to see the call log, it's on tape; and he said I don't mind, you can look at it. He said I would rather you have my wife bring it to you because I don't want her to lose her job if you-all go up in there questioning her, so we said okay.
>
> When we got through interviewing him, we went to Sally and asked her to, you know, meet us outside, and she brought the phone out. And we questioned her briefly about the identity of this person Hot Boy. And she said Hot Boy also goes by the name Muther.[26]

The following exchange then took place:

> **Q**. Muther?
> **A**. Like Luther, but with an "M."
> **Q**. Were you familiar with that nickname?
> **A**. I heard of it, but I couldn't remember right off hand who it was.
> **Q**. Okay. Now, did you talk with Mr. Inzinna about that nickname?
> **A**. Yes. We went back to the jail. By this time, all the interviews were over with and he had been brought back to the jail. We went in and asked him who Muther was, did he know that name, did Hot Boy go by that and he said yes he did.[27]

Detective O'Berry then explained that he was able to identify Petitioner based on his

nickname "Muther."

Petitioner contends, "Ben's wife's out of court statement got Mr. Bunch a warrant

for his arrest because she told police officer that Mr. Bunch go by the street name 'Mutha'

and also, 'Hot Boy.' Ben Inzinnia's wife did not testify at Mr. Bunch's trial nor was there a

written statement in open court, yet, the D.A. still used her statement at Mr. Bunch's trial

and on Mr. Bunch's appellate brief." According to Petitioner, Detective O'Berry's testimony

---

[26] State Rec., Vol. 3 of 6, Trial Transcript at R.pp. 540-541, Tr. at 151-52.
[27] State Rec., Vol. 3 of 6, Trial Transcript at R.pp. 540-541, Tr. at 151-52.

should have been deemed inadmissible, as it violated his right to confront the witnesses against him, namely Mrs. Inzinna.

Magistrate Judge North recommended this claim be dismissed, noting that Detective O'Berry did not offer these statements for the truth of the matter asserted, and therefore, his testimony did not violate the Confrontation Clause. In his objection to the magistrate judge's recommendation, Petitioner contends he "had an inherent right to confront Ben's wife because her statement was used to obtain an arrest warrant against him in the first place."[28]

The Court agrees with the magistrate judge's recommended disposition. First, to the extent Petitioner argues Detective O'Berry violated his constitutional rights by relying on Mrs. Inzinna's statements to obtain an arrest warrant, the Court notes the Federal Rules of Evidence, which prohibit out of court statements offered for the truth of the matter asserted, do not apply to warrant applications.[29] Second, Detective O'Berry did not offer Mrs. Inzinna's statements to prove Petitioner goes by the nickname "Muther"; rather, Detective O'Berry was merely explaining how he came to identify the third robbery suspect as Petitioner. Thus, Detective O'Berry's statement does not constitute hearsay under Louisiana law: "Under the Louisiana Rules of Evidence, an investigating officer may be permitted to refer to statements made to him by other persons involved in the case without it constituting hearsay if it explains his own actions during the course of an investigation and the steps leading to the defendant's arrest."[30] As a result, the Court will not grant the writ on this basis.

---

[28] R. Doc. 20 at 2.
[29] FED. R. EVID. 1101 (a)–(b).
[30] *Woodfox v. Cain*, 609 F.3d 774, 814 (5th Cir. 2010).

C. <u>Petitioner's trial counsel provided constitutionally adequate representation</u>

Next, Petitioner argues his trial counsel's performance was deficient because: (1) he did not call witnesses who would "testify regarding [his] unique and distinctive characteristics[,] which the victim admittedly failed to notice during the robbery," and (2) "failing to challenge a juror who admitting to knowing the victim."[31]

The clearly established Federal law applicable to Chester's ineffective assistance claim is *Strickland v. Washington*'s familiar two part test.[32] Under *Strickland*, a petitioner must demonstrate (1) that his counsel's performance was deficient and (2) that his counsel's deficient performance prejudiced the outcome of his trial.[33] The petitioner must satisfy both prongs to succeed.[34]

To establish a deficient performance, the petitioner must show that his counsel's representation "fell below an objective standard of reasonableness."[35] The Court applies a highly deferential standard to the examination of counsel's performance, making every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.[36]

The second, or prejudice, prong of *Strickland* requires a petitioner to show that "there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[37]

---

[31] R. Doc. 20.
[32] 466 U.S. 668, 687 (1984).
[33] *Id.*
[34] *Id.* at 687.
[35] *Jones v. Jones*, 163 F.3d 285, 301 (5th Cir. 1998) (quoting *Strickland*, 466 U.S. at 688).
[36] *See id.* (quoting *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997)); *see also Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (on ineffective assistance claim, courts judge counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct).
[37] *Strickland*, 466 U.S. at 694.

The Court analyzes each of Petitioner's *Strickland* claims in turn.

### a. Failure to call witnesses

When he gave his statement to police, the victim, Singletary, did not mention that the man who pulled a gun on him had tattoos on his face and several gold teeth. Petitioner argues that, given that he has many facial tattoos and gold teeth, that the victim did not recall these features was significant and evidence of his innocence. He argues his trial counsel's failure to call witnesses to testify regarding Petitioner's "unique and distinctive characteristics" constitutes ineffective assistance.

The Fifth Circuit has repeatedly cautioned against finding trial counsel's performance constitutionally deficient based on his or her failure to call a witness.

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.[38]

Petitioner does not identify who his counsel should have called, nor does he offer what he or she would have testified to specifically. Notably, the jurors were able to observe these characteristics without the aid of witness testimony, given that Petitioner was in the courtroom during trial. Finally, although he did not offer witnesses to detail Petitioner's distinguishing facial features, counsel did attack the reliability of the victim's identification

---

[38] *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

of Petitioner based on the victim's failure to report to the police that his assailant had facial tattoos and gold teeth. During the trial, defense counsel asked the victim:

> "[M]y client has tattoos, you don't see them, you are looking at his eyes, how are you looking at his eyes and not seeing his face; looking, seeing braids, you've explained that a little bit, but not seeing tattoos; he's talked to you and he's robbed you, but you are not seeing his gold teeth. If he says give me all your money, how are you missing these two big, big details: Tattos and gold teeth on his face?"[39]

To which the witness answered: "I was not looking at his mouth; I was not looking at his arms. I was looking at the gun that he had right jamming me in the side of my head."[40]

The record reveals Petitioner's trial counsel sufficiently focused the jury's attention on Petitioner's distinctive characteristics. Trial counsel strategically determined it was not necessary to call Petitioner's acquaintances as defense witnesses to attest to his unique and highly visible characteristics, which no one denied he possessed, when doing so likely would not have benefitted the defense.[41] Petitioner is not entitled to relief on this claim.

### b. Failure to strike juror who knew the victim

Petitioner's second *Strickland* claim is that his trial counsel was ineffective for failing to challenge a prospective juror who admitted she knew the victim. Although Petitioner does not name the juror at issue, the voir dire transcript reflects that juror Adair Miller admitted she knew the victim. After Miller admitted to knowing the victim, Defense counsel acknowledged, that merely knowing someone is not grounds to strike a juror, unless that prospective juror would "hold that person either to a higher standard or not believe or believe everything they say." Thereafter, the following exchange between defense counsel and Miller took place:

---

[39] State Rec., Vol. 3 of 6, Trial Transcript, R.pp. 619.
[40] State Rec., Vol. 3 of 6, Trial Transcript, R.pp. 619-620.
[41] *See Woodfox v. Cain*, 609 F.3d at 808.

**Q**: The last main area I want to talk a little bit about is your knowledge of eye witness testimony, to be able to again talk about weighing the evidence. If you are presented with only testimony from an individual with no supporting documents, are you going to be able to accurately, again, weigh the testimony of that individual, determine whether in your mind they are telling the truth or lying? Is that going to be a problem . . . ?

**A**: It wouldn't be a problem.

**Q**: [D]o you have any idea how would you determine in your mind whether someone is lying or not?

**A**: I'd have to hear all the facts.

**Q**: So, as a reasonable person, one would not just gut feeling say, oh, they are lying?

**A**: No.

**Q**: You'd weigh the testimony.

**A**: Yes.

**Q**: See if there's anything maybe conflicting of statements that don't match.

**A**: That's it.

**Q**: Factors associated with what they are saying, where they were, those kinds of things?

**A**: You'd have to weigh it all out first and hear all the evidence.[42]

Juror bias is a question of fact for the trial court, and a trial court's determination of juror bias is afforded great deference.[43] Petitioner has failed to establish any actual or presumed bias, other than to point out that Miller knew the victim. The mere allegation that a juror is acquainted with the victim, standing alone, does not require that prospective juror be disqualified.[44] Despite her being acquainted with the victim, Miller acknowledged she could fairly assess and weigh the evidence in the case. Without some valid basis for an objection, counsel's performance was not deficient for allowing Miller to remain on the jury.[45] As a result, the Court will not grant the writ on this basis.

---

[42] State Rec., Vol. 2 of 6, Tr. at 74-75.
[43] *See Virgil v. Dretke*, 446 F.3d 598, 610 n. 52 (5th Cir. 2006).
[44] *Montoya v. Scott*, 65 F.3d 405, 419–20 (5th Cir. 1995) (allegation that juror was acquainted with victim does not alone establish bias sufficient to disqualify juror).
[45] Petitioner argues Miller is related to the victim. He offers no evidence of this assertion, and the Court's review of the record did not reveal any indication Miller and Singletary are related.

D. <u>The photo array used to identify Petitioner was not unduly suggestive</u>

During their investigation, detectives showed the victim a photo array containing a picture of Petitioner along with photographs of five other men of similar age, weight, and complexion. Petitioner argues this identification process was unduly suggestive because his head was noticeably smaller than any of the others. He asserts the lineup shows "6 photos Mr. Bunch #5 everybody head on it was big like a basketball Mr. Bunch head was like a seed."[46] His motion to suppress the identification was denied by the trial court. The state courts denied the claim on the merits on collateral review.

To be entitled to habeas relief based on a suggestive identification procedure, a petitioner must show that the identification procedure was "so unnecessarily suggestive and conductive to irreparable mistaken identification that he was denied due process of law."[47] Even if a pretrial identification procedure is suggestive, a reviewing court must look to the totality of the circumstances to determine whether the identification is reliable.[48] In making that determination, the Court considers the following five factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.[49]

The state court determined that, given the similarity between the men in the photo array, the lineup was not "suggestive as to who the defendant was."[50] Moreover, even if the lineup were suggestive, the victim testified that during the robbery, although he was more

---

[46] R. Doc. 3-1 at 49.
[47] *Neil v. Biggers*, 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967)); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).
[48] *Biggers*, 409 U.S. at 199-20.
[49] *Brathwaite*, 432 U.S. at 114; *see also Biggers*, 409 U.S. at 199–200.
[50] State Rec., Vol. 2 of 6, Suppression Hearing, R.p. 508, Tr. at 121.

focused on the gun being pointed at him, he was able to see Petitioner's face. The victim testified that, "[t]he main reason I could tell [Petitioner was the assailant] was because of the eyes. That's what I was looking at. It scared the mess out of me. God."[51] Finally, the victim identified Petitioner via the photo array two days after the crime occurred. As a result, the Court concludes the photo array was sufficiently reliable. Petitioner is not entitled to a writ of habeas corpus on this basis.

E. Petitioner's challenge to his sentence is procedurally defaulted

Petitioner filed an amended petition raising additional claims relating to his habitual-offender sentence. These claims include: (1) the failure to advise him of his right to remain silent deprived him of due process during multiple-offender guilty-plea proceedings; (2) failure by the State to file a valid multiple bill of information alleging a violation of Louisiana Revised Statute 14:64.3, to support an additional five-year sentence penalty; and (3) failure to impose a term of hard labor. The Louisiana Supreme Court rejected the sentencing claims as not cognizable on collateral review. The Louisiana Supreme Court on post-conviction review relied upon state procedural rules as the basis for denying relief on his sentencing claims, citing Louisiana Code of Criminal Procedure article 930.3. Magistrate Judge North concluded, *sua sponte*, that Petitioner's claim regarding his habitual offender status is procedurally defaulted.[52] In his objection to the magistrate judge's recommendation, Petitioner simply reiterates his underlying claim, but does not object to the magistrate judge's conclusion that the claim is procedurally defaulted.

Generally, a federal court is barred from reviewing a question of federal law decided by a state court if the decision of that state court rests on a state-law ground that is both

---

[51] State Rec., Vol. 3 of 6, Trial Transcript, R.pp. 608–09.
[52] R. Doc. 19 at 27–32.

independent of the merits of the federal claim and adequate to support that judgment.[53] The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.[54] This type of procedural default will bar federal-court review of a federal claim raised in a habeas petition when, as here, the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.[55]

In this case, the Louisiana court denied Petitioner relief with respect to this claim pursuant to Louisiana Code of Criminal Procedure article 930.3. Courts in this Circuit routinely hold that rulings based on this article constitute an independent and adequate state-law ground for dismissal that bars review of similar claims in a federal habeas corpus proceeding.[56]

The Court, having considered the record, the applicable law, relevant filings, and the magistrate judge's Report and Recommendation finds the magistrate judge's findings of fact and conclusions of law are correct and hereby approves the United States Magistrate Judge's Report and Recommendation and **ADOPTS** it as its opinion in this matter.[57]

---

[53] *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).
[54] *Coleman*, 501 U.S. at 731–32; *Amos*, 61 F.3d at 338.
[55] *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.
[56] *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000); *Zantiz v. Louisiana*, No. 12–2908, 2014 WL 775577, at *7 (E.D. La. Feb. 25, 2014) (order adopting report); *Johnson v. Cain*, No. 12–0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012); *Evans v. Cain*, No. 112584, 2012 WL 2565008, at *6–*7 (E.D. La. Mar. 14, 2012), *as adopted by*, 2012 WL 2565001, at *1 (E.D. La. Jul. 2, 2012); *Taylor v. Cain*, No. 07–3929, 2008 WL 4186883, at * 16 (E.D. La. Sep. 10, 2008) (order adopting report); *Williams v. Cain*, No. 05–0710, 2008 WL 3363562, at *8 (E.D. La. Aug. 8, 2008) (order adopting report).

A federal habeas petitioner may be afforded federal review of a procedurally defaulted claim only if he demonstrates "cause" for his default and "prejudice attributed thereto," or that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover v. Cain*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32). In this case, Petitioner has neither argued nor demonstrated either prong of this exception.
[57] R. Doc. 19.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that Petitioner Harold Bunch's application for federal habeas corpus relief be and hereby is **DISMISSED WITH PREJUDICE**.[58]


**New Orleans, Louisiana, this 13th day of August, 2018.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[58] R. Docs. 3, 7.